These two suits were brought by employees of the defendants, Ethyl Corporation and E. I. duPont deNemours Company, Inc., its predecessor, under the Fair Labor Standards Act of 1938, Acts of June 25, 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. §§ 201-219. The two cases were consolidated and presented together to the District Court, as they involve the same issues or issue.
The Hitzman case alleges that the various petitioners (Francis A. Hitzman and numerous others) were employed in the Tetra Lead Ethyl Department of the predecessor to Ethyl Corporation, the E. I. duPont deNemours Company, Inc., working as shift men at the plant of said company in the Parish of East Baton Rouge, for the eleven months' period beginning Nov. 13, 1944, and ending Oct. 12, 1945, but not employed by either defendant at the time of filing the suit. The petition further alleges that all the petitioners are of full age and members of the United Mine Workers of America, Locals 12883 and 12900, District 50, Independent, and that said union entered into a written stipulation with the defendant Ethyl Corporation, after previous negotiations, with reference to a dispute which arose between them that "at the request of the National War Labor Board, they do hereby agree to accept the final action by the Eighth Regional Board as final and binding arbitration on the issue in dispute * * *". It is shown by the petition and other pleadings that the issue in dispute was whether or not the employees (or certain employees) of the defendants were entitled to certain change clothes time as compensable work time under the Fair Labor Standards Act of 1938. The "change clothes time" issue is based on the proposition that certain employees of defendants in order to perform their work were required to change their clothes and/or bathe before reporting to their respective duties, and similarly upon leaving their work. *Page 156 
The Saucier suit is based on the same material allegations as the Hitzman suit except that it alleges "That petitioners are patrolmen or guards now employed by the Ethyl Corporation at its plant * * * and were similarly employed as guards or patrolmen in the Tetra Ethyl Lead Department of the predecessor * * * for the eleven months period beginning November 13, 1944, and ending October 12, 1945."
The Hitzman case was filed April 19, 1947; the Saucier case on April 15, 1947. In each case, by reference the record of the case of Howard Williamson et al. v. E. I. Dupont de Nemours 
Company et al. was made a part of the petition.
The Williamson case was based on the same general proposition that certain employees of the defendants were entitled to additional compensation under the Fair Labor Standards Act of 1938 because of "change clothes time". It is alleged in the original Williamson petition that "This suit is for and on behalf of all the named petitioners herein separately and severally and for and on behalf of all other parties who may be timely added as parties petitioner by supplemental pleading, intervention or otherwise, all of whom are of the same general class and similarly situated with petitioners herein as employees of the defendants as aforesaid." It is further alleged in the Williamson case that "The petitioners * * * and all others similarly situated and of the same class are employees of the defendants * * * and have been so employed by the defendants for more than one year immediately prior to filing of this cause; * * * engaged as employees in the production of goods for commerce (interstate), within the meaning of the Fair Labor Standards Act of 1938." It is further alleged in the Williamson petition that the petitioners were required and directed by the defendants, as a condition of their said employment, to wear specially provided clothes and equipment while working and were required and directed by the defendants to change from their street clothes to their said work clothes at designated change rooms on plant premises at the beginning and end of each daily work shift, and, in effect, that this "change clothes time" should be added to their "work time".
The Williamson petition further sets forth that the demand of the employees was submitted to arbitration by the Ethyl Corporation and the Union to the Eighth Regional War Labor Board, with the stipulation that the final action of said Board would be a final and binding arbitration on the issue in dispute.
The Eighth Regional War Labor Board rendered its arbitration award on Oct. 26, 1945, on the stipulation submitted of date October 17, 1945. This arbitration award allowed compensation for clothes changing time to employees in the Tetra Ethyl Lead Division and the cell room of the Sodium Section, but denied compensation to other employees.
Settlement was made in the Williamson suit, as set forth in defendant's brief, to the following effect:
(a) Plaintiffs acknowledged that defendants were in full compliance with the Fair Labor Standards Act on and after Oct. 13, 1945.
(b) For employees in the Tetra Ethyl Lead Division, not theretofore settled with, settlement was made for a period of eleven months, beginning Nov. 13, 1944, and ending Oct. 12, 1945. (The Court had sustained exception of one year as to all claims for wages more than one year prior to the dates the plaintiffs respectively brought suit. The suit was filed by some on Nov. 13, 1945, and others intervened by supplemental petitions at later dates. For the sake of uniformity of treatment, all plaintiffs were treated as though they had filed suit the same day.)
(c) Payments were calculated by crediting each plaintiff entitled to judgment under the settlement with 30 minutes for clothes changing time for each work day.
(d) By agreement included in the settlement were certain employees of the Tetra Ethyl Lead Division who were still employees, but who had not brought suit, in the interest of uniform treatment of all employees similarly situated. Settlement with former employees, no longer employed, was refused. *Page 157 
To the petitions of plaintiffs in the Hitzman and Saucier cases, the defendants filed exceptions, including a plea of prescription. The trial court was of the opinion that the plea of prescription should be sustained, and therefore found it unnecessary to pass on the other exceptions and sustaining the plea of prescription dismissed the suits of plaintiffs at their costs. The plaintiffs have appealed.
The only question before this court is whether or not the trial court was correct in sustaining the plea of prescription.
It is the contention of defendants that these claims for overtime compensation under the Fair Labor Standards Act of 1938 were claims for wages (with which contention the trial judge agreed), and therefore prescribed under Articles 3534 and 3535 of the Revised Civil Code. Article 3534 R.C.C. provides:
"The following actions are prescribed by one year: * * *
"That of workmen, laborers and servants, for the payment of their wages."
Article 3535, R.C.C. provides: "In the cases mentioned in the preceding article, the prescription takes place, although there may have been a regular continuance of supplies, or of labor or other service. It only ceases from the time when there has been an account acknowledged, a note or bond given, or a suit instituted."
The Fair Labor Standards Act of 1938 contained no provision limiting the time for bringing actions under its provisions when these suits were filed, and in the absence of congressional legislation, the Courts of the United States will apply the statutes of limitations (prescription) of the State in law actions. That principle has been repeatedly applied under the Fair Labor Standards Act of 1938. See Loggins v. Steel Construction Co., 5 Cir., 1942, 129 F.2d 118, a case arising in this state. See also annotations in 29 U.S.C.A. § 216, Note 49.
The trial judge correctly stated in his opinion that "Inasmuch as the alleged wages * * * cover a period far in excess of one year prior to the filing of the original and supplemental petitions * * * the plea of prescription of one year must be sustained and plaintiff's suit dismissed unless there was an interruption of prescription, for under the law of Louisiana such claims are prescribed in one year;" citing the case of Johnson v. Anderson-Dunham Concrete Company,212 La. 276, 31 So.2d 797.
Plaintiffs' counsel in their brief concedes that Johnson v. Anderson-Dunham Concrete Company, supra, plainly shows an overtime claim of this sort is within the scope of the section containing Article 3534, et seq. which governs wage claims; but they contend that there are a number of reasons why the plea of one year prescription is not applicable to the facts of this case. Their contentions summed up are to the effect that the actions of the Union and the Company, and the Eighth Regional Labor Board, and the settlement in the Williamson case, put the present plaintiffs in the similar position of the petitioners in the Williamson case, thereby giving them ten years to prosecute their claims or in the alternative the actions aforesaid were tantamount to an acknowledgment (an account stated) on the part of the Company on behalf of the present plaintiffs, since they were persons similarly situated to the employees involved in the Williamson settlement. Plaintiff's brief states: "There would seem to be little or no doubt but that pretermitting the issue of compromise adjustment hereafter discussed prescription in the first place was interrupted by, first, the provision in the contract of Feb. 23, 1945 wherein the right was expressly reserved, and second, by the stipulation of Oct. 17, 1945 (submitting the arbitration to the War Labor Board), antedating the War Labor Board wherein defendants expressly agreed to be bound thereby, third, by the award itself of date Oct. 26, 1945, and finally by the institution of the suit in Howard Williamson, et als vs. E. I. DuPont deNemours and Company et als, supra, filed Nov. 13, 1945, and by all the subsequent proceedings had therein * * * ending with the stipulation of facts dated Jan. 9, 1947, and filed on the same date, and the final judgment of the court signed on March 10, 1947." *Page 158 
The answer to the above is succinctly set forth by the trial judge in his written opinion as follows: "I can see no merit in the contention of plaintiffs that the filing of suit by other employees interrupted the running of prescription against the present plaintiffs who were not parties to that suit. It must be remembered that the claims asserted by these plaintiffs belong individually to each plaintiff and in my opinion in order for any individual plaintiff to interrupt prescription as to his claim for wages, it would be necessary for him to join in the suit originally as a party plaintiff or become a party by supplemental petition and if he did so become party by supplemental petition, then prescription would be interrupted from the date of his filing his supplemental petition."
In so far as the question of acknowledgment is concerned, that is controlled by Art. 3520, R.C.C. which provides: "Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribe."
The jurisprudence interpreting the quoted article is to the effect that the acknowledgment must be clear, specific, positive and unequivocal, and made with the intention of interrupting prescription.
In the case of Bremer v. North Central Texas Oil Co., Inc. et al., 185 La. 917, 171 So. 75, 77, a case wherein the Supreme Court of this State had under consideration the interpretation of Art. 3520, R.C.C., the Supreme Court stated: "But Article 3520 of the Code, which says that prescription ceases to run whenever the debtor or possessor 'makes acknowledgment of the right of the person whose title they prescribe,' does not mean that a mere acknowledgment of the existence of the rights of those in whose favor the servitude runs interrupts prescription. There must be more than a bare acknowledgment; the acknowledgment must be accompanied by or coupled with 'the purpose and intention of the party making the acknowledgment to interrupt the prescription then running.' Such was the opinion of every member of this court when the case of Frost Lumber Industries, Inc., v. Union Power Co., Inc., 182 La. 439,162 So. 37, was decided on April 1, 1935. We reached that conclusion after an exhaustive review of the jurisprudence on the subject."
There is nothing in the actions of the Union and the Company and the War Labor Board and the filing of the Williamson suit which, in the least, interrupted the running of prescription of non-suing employees even though similarly situated. Furthermore, there is nothing in the compromise agreement to show or even indicate that the company intended to interrupt the running of prescription in these plaintiffs' behalf. To the contrary, these plaintiffs were specifically excluded from the benefits of the compromise agreement. The action of these plaintiffs in the suits before us was not timely and therefore prescribed.
For these reasons the judgments appealed from are affirmed.