437 F.2d 1011
 Antoine R. BOUDREAUX, Plaintiff-Appellant,
Henry Wells, Jr. and Daniel C. Collins, Intervenors,
v.
BATON ROUGE MARINE CONTRACTING COMPANY, Ryan Stevedoring Co. and Local 1830 and Local 1833, General Longshore Workers, International Longshoremen's Association, AFL-CIO, Defendants-Appellees.
 No. 29225.
 United States Court of Appeals, Fifth Circuit.
 February 1, 1971.
 
 Johnnie A. Jones, Baton Rouge, La., Lowell Johnston, Gabrielle A. Kirk, New Jack Greenberg, William L. Robinson, Lowell Johnston, Gabrielle A. Kirk, New York City, for plaintiff-appellant; George A. Davidson, Charles O. Blaisdell, Robert M. Fuster, Albert J. Rosenthal, New York City, of counsel.
 C. Paul Barker, Jerry L. Gardner, Jr., Dodd, Hirsch, Barker, Meunier, Boudreaux & Lamy, New Orleans, La., for Locals 1830 and 1833 General Longshore Workers, etc.; Richard M. Troy, of counsel.
 Armbrecht, Jackson & DeMouy, Mobile, Ala., for Ryan Stevedoring Co., Inc.
 George Mathews, Dale, Owen, Richardson, Taylor & Mathews, Baton Rouge, La., for Baton Rouge Marine Contractors, Inc. and Ryan Stevedoring Co. Inc.
 Before COLEMAN, INGRAHAM and WILKEY,* Circuit Judges.
 WILKEY, Circuit Judge:
 
 
 1
 Appellant brought this suit alleging discriminatory employment practices by two stevedoring companies and two local unions. Relief was sought pursuant to Title VII of the Civil Rights Act of 1964,[1] and also under 42 U.S.C. § 1981, a statutory derivative of the Civil Rights Act of 1866.
 
 
 2
 The District Court granted summary judgment against appellant, holding that he was not a "person aggrieved" as contemplated by the Civil Rights Act of 1964 and was therefore without standing to sue under Title VII, and that on the facts presented appellant had "stated no claim under 42 U.S.C.A. 1981." Finding both such determinations of the District Court to have been erroneous, we reverse and remand for trial.
 
 
 3
 Appellant Boudreaux has been a longshoreman for some 40 years. Since 1957 he has resided in Baton Rouge, Louisiana, and has worked for appellees Baton Rouge Marine Contracting Co., Ryan Stevedoring Co., and other stevedoring firms in Baton Rouge and Port Allen, Louisiana. The two defendant unions, Local 1830 and Local 1833, General Longshore Workers, International Longshoremen's Association, AFL-CIO, pursuant to collective bargaining agreements provide manpower for the dockside operations of Baton Rouge and Port Allen stevedoring firms, including appellees Baton Rouge Marine and Ryan. Local 1830, of which Boudreaux is a member and vice-president, at the time the complaint was filed had an entirely Negro membership of approximately 200 men. Local 1833 had an all white membership of approximately 100. Twice daily union members desiring work report to the docks for what is known as a "shape up." From the group of longshoremen thus reporting, men are selected to fulfill the work requirements of the stevedoring companies for the following shift.
 
 
 4
 The District Court accurately summarized Boudreaux's complaint as follows:
 
 
 5
 Plaintiff contends that longshoremen's work at the dock is assigned by giving one job to a member of Local 1830 and the next one to a member of Local 1833, and thus alternating between the two unions. He contends that this results in the individual white members of Local 1833 getting twice as many jobs as the individual members of Local 1830, and that thus there is a "built in" discrimination against the individual members of Local 1830. As a further ground for demanding relief, plaintiff contends that the "undesirable" jobs, such as jobs requiring heavy lifting and "dirty work" are always assigned to members of Local 1830, while desirable jobs, such as foreman, walking foreman, checker, clerk, and crane operator are always assigned to members of Local 1833. Plaintiff contends that all of the defendants are jointly responsible for these practices * * *.
 
 
 6
 Prior to the filing of the present action, appellant, as required by Title VII,[2] had presented these charges to the Equal Employment Opportunity Commission (EEOC), on 20 and 26 January 1967. After investigation the EEOC found that appellant was a person aggrieved within the meaning of the statute,[3] and undertook to conciliate the dispute by seeking to obtain the elimination of the discriminatory practices through the voluntary action of appellees. The conciliation effort was unsuccessful, however, and on 17 December 1969, nearly two years after the filing of the charges, after issuing its decision finding reasonable cause to believe that appellees were violating Title VII, the EEOC notified appellant that he was eligible to seek redress in the courts. Within 30 days the instant suit was commenced by appellant on behalf of himself and all others similarly situated.[4]
 
 
 7
 I. The Claim Under the Civil Rights Act of 1964
 
 
 8
 On the Title VII claim the District Court granted summary judgment for appellees on the ground that the pleadings and discovery materials showed that appellant had not met the "jurisdictional prerequisite" for suit of being personally affected by the alleged discrimination within 90 days prior to the filing of charges with the EEOC.[5] This finding was based on the fact that on 30 March 1966 appellant had suffered a broken ankle while working as a longshoreman aboard a ship in Baton Rouge. From the time of his injury until the filing of the EEOC charges (some 9 months), and for some 24 months thereafter, appellant did not report for any shape-ups and consequently did not apply to and performed no work for either of the appellee companies. Throughout this time, appellant received disability compensation under the Longshoremen's and Harbor Workers' Act.
 
 
 9
 Assuming that the 90-day requirement is indeed a "jurisdictional prerequisite" to suit,[6] and if the above facts were all that was presented to the District Court, summary judgment would have been properly entered. However, Boudreaux testified on deposition that at the time he filed his EEOC charges he was in fact physically capable of performing certain types of "light" work, i. e., jobs that did not require heavy lifting, climbing ladders, etc. Such jobs, he alleged, were never given to Negroes, but were reserved exclusively for white workers. To have reported for the shape-ups during the 90-day period in the hope of being hired for this "white only" work, he maintains, would have been a futile act.[7]
 
 
 10
 In our view, this testimony created disputed issues of material fact, i. e., whether appellant was capable of performing "light work" during the relevant period, and whether, under the prevailing employment practices, "light work" was reserved exclusively for whites, thus rendering the suit inappropriate for resolution via summary judgment.[8] Appellant should have been permitted the opportunity to prove his claim that he was capable of light work, but that discriminatory practices made it unavailable to him.[9]
 
 
 11
 II. The Claim Under the Civil Rights Act of 1866
 
 
 12
 However, even if appellant is unable to demonstrate his aggrieved status within the 90-day period for the purposes of his Title VII claim, on the facts of this case it is clear that he has stated a claim for relief under 42 U.S.C. § 1981.[10] The District Court's holding that no such claim was made out may be attributable either to the view that § 1981 does not reach purely private incidents of racial discrimination in employment where no "state action" is involved,[11] or to the contention that the enactment of Title VII of the Civil Rights Act of 1964 preempted or repealed by implication whatever remedy for employment discrimination that previously existed under § 1981.[12] Whatever the basis for the District Court's holding, it suffices to note here that this court has explicitly rejected both of these positions in Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970).
 
 
 13
 As to the former of these contentions, we noted, in agreement with the 7th Circuit,[13] that:
 
 
 14
 § 1981 prohibits "private racial discrimination in employment by companies and unions." Such a conclusion was clearly forecast by the Supreme Court's opinion in Jones v. Alfred H. Meyer Co. [392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968)]. In Jones the Court held that 42 U.S.C.A. § 1982 prohibited "all racial discrimination, private as well as public, in the sale or rental of property. * * *" The Seventh Circuit reasoned that since § 1981 and § 1982 are both derived from § 1 of the Civil Rights Act of 1866, they must be construed consistently and that since § 1982 is enforceable against private entities, § 1981 is similarly enforceable. We agree. * * * [D]efendant's concern that this decision is unprecedented is much too myopic. The result in this case is both predicted and required by Jones.[14]
 
 
 15
 On the argument that Title VII preempted the prior remedy provided by § 1981, this court, again relying on Jones v. Alfred H. Meyer Co., 392 U.S. 409, 88 S.Ct. 2186, 21 L.Ed.2d 1189, held in Sanders that "the equal employment provisions of the * * * Civil Rights Act of 1964 do not supersede the provisions of § 1981 * * *. [T]he specific remedies fashioned by Congress in Title VII were not intended to preempt the general remedial language of § 1981.[15] In Sanders, as in the instant case, the appellant had first sought redress under Title VII. After conciliation had failed, Mrs. Sanders was provided by the EEOC with notification of her entitlement to bring suit within 30 days. Her suit, in contrast to that in the case at bar, was not filed until after the 30-day period had elapsed. This court held that, although dismissal of the Title VII action was proper for failure to sue within the statutory period, Mrs. Sanders should have been permitted to amend her complaint to state a claim under § 1981, which is not subject to such a stringent statute of limitations.[16]
 
 
 16
 If a plaintiff who has not met what is clearly a jurisdictional prerequisite to a Title VII suit, i. e., the 30-day requirement for filing a court complaint, may nevertheless maintain an action pursuant to § 1981, a fortiori, in the instant case, any failure of appellant to comply with the 90-day requirement in filing charges with the Commission[17] is likewise no bar to instituting a § 1981 action.
 
 For the foregoing reasons the case is
 
 17
 Reversed and remanded.
 
 
 
 Notes:
 
 
 *
 Of the District of Columbia Circuit, sitting by designation
 
 
 [1]
 42 U.S.C. § 2000e et seq
 
 
 [2]
 Id., § 2000e-5(e)
 
 
 [3]
 The Commission's findings in this respect were as follows:
 Although he has not been recently employed by Respondent, Charging Party [Boudreaux] may be regarded as an aggrieved person in that, as a member of Local 1830, he is eligible to be referred by his union for work for Respondent and, thus, would tend to be affected by Respondent's employment practices. Further, his Union, Local 1830, has a current bargaining agreement with the Respondent that affects the employment rights of Charging Party and other members of said local.
 Appellee stevedoring companies attempt to disparage this finding by maintaining that under the "shape up" employment system described in the text, supra, no actual "referral" by the Union takes place. However, it clearly appears from the answer of the Unions, who were also defendants in this case, that the Unions themselves also regard their role as involving referrals for employment. (App. 56)
 
 
 [4]
 The stevedoring companies moved to dismiss the original complaint on the grounds that it did not set forth any allegations of discrimination personal to Boudreaux. The District Court denied the motion, but directed that Boudreaux either amend his complaint to state incidents of discrimination personal to him or procure the intervention of other members of the class with such specific claims. Thereafter Boudreaux amended his complaint to allege incidents of discrimination taking place in 1965 and 1966. Intervenors Wells and Collins also filed complaints, alleging the same discriminatory practices as were set forth in Boudreaux's complaint, and claiming to have been personally affected by them throughout 1967, 1968, and up until the filing of their intervention. Neither Wells nor Collins had first filed complaints with the EEOC. On the subsequent motion for summary judgment, the District Court properly held that, with respect to the Title VII claims, intervenors' complaint stood or fell on the sufficiency of Boudreaux's amended complaint. Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 499 (5th Cir. 1968)
 
 
 [5]
 Subsection (a) of 42 U.S.C. § 2000e-5 requires that charges filed with the EEOC shall be "in writing under oath by a person claiming to be aggrieved * * *." Subsection (d) requires that "A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred * * *." We observe that this 90-day requirement is a requisite to filing charges with the EEOC; nothing is said here as to any jurisdictional prerequisite for filing suit in the United States District Court
 
 
 [6]
 It is not immediately apparent why the jurisdictional basis for the instant suit should be open to challenge on the ground that the plaintiff was not a person aggrieved within 90 days of the filing of the EEOC charges, as required by the statute. The EEOC is the agency upon which the statute places the burden of determining whether a charge has been timely filed, so as to permit it to investigate and attempt to conciliate the charge in accordance with the statutory scheme. The statute expressly conditions District Court jurisdiction only (1) upon there having been a prior opportunity for the EEOC to have resolved the charge through voluntary conciliation, and (2) upon the suit being filed within 30 days after receipt of the EEOC notification of entitlement to sue. Where the EEOC has once determined that a charge was timely, and that the charging party was a person aggrieved within the 90-day period, and has actually entered into a conciliation attempt, it does not seem particularly in keeping with the congressional intent that the timeliness of the filing of the EEOC charge should be open to reconsideration by the court, when, often years or many months afterward, a suit is brought because conciliation has failed. The 90-day requirement seems to be directed toward ensuring that the Commission expend its conciliation resources only on alleged unlawful employment practices which are reasonably current. However, once the Commission has determined that the practices complained of are current, and that the charging party has been adversely affected thereby, and it has actually committed its resources to the conciliation process, that determination logically should be open to jurisdictional challenge only on the ground that it was without a rational basis
 This would be consistent with the clear congressional policy favoring resolution of these disputes through voluntary conciliation. Of course, where, due to time and staffing limitations, the Commission has not attempted conciliation, but after the expiration of the statutory 60-day conciliation period (42 U.S.C. § 2000e-5(e)) has merely provided the charging party with notification of entitlement to sue, see Culpepper v. Reynolds Metals Co., 421 F.2d 888, 890, n. 2 (5th Cir. 1970), a de novo determination by the court of the charging party's aggrieved status within the 90-day period would seem to be an appropriate course.
 Nevertheless, a dictum of this court has previously indicated that de novo establishment of compliance with the 90-day period may be a "jurisdictional requirement," Culpepper v. Reynolds Metals Co., supra, at 891, and the Seventh Circuit has also so indicated, Choate v. Caterpillar Tractor Co., 402 F.2d 357, 359 (7th Cir. 1968), as have several District Courts, see, e. g., Culpepper v. Reynolds Metals Co., 296 F.Supp. 1232 (N.D.Ga.1969); Banks v. Local Union 136, International Brotherhood of Electrical Workers, 296 F.Supp. 1188 (N.D. Ala.1968); Bowe v. Colgate-Palmolive Co., 272 F.Supp. 332 (S.D.Ind.1967) (semble). Since we have determined for other reasons set forth in the text that appellant has properly stated a claim for relief and that summary judgment was improperly granted, we do not find it necessary to decide for the first time whether the 90-day requirement is in fact a "jurisdictional prerequisite" to suit under Title VII.
 
 
 [7]
 Initially, at least, the trial judge evidently agreed with this position. At the hearing on the motion to dismiss (see note 4,supra) the judge stated:
 I think the allegation of his complaint is that there was a continuing discrimination against these people and the fact that this man did not go out and appear for a shape-up, I can't blame him for it, if you go out there and stand every day and don't get a job, and you know before you go you will not get a job. I don't know if that is a fact, but that is what they claim the fact to be, and that is a question for the merits. If he goes out there and knows in advance there is no use, it would just be an exercise in futility and certainly he is more than justified in not reporting for a shapeup. I would not report if I knew I was not going to get a job anyway. * * * I think that this plaintiff, even though he might not have appeared at the shape-up, even though he may not have sought work because of the fact that he knew he could not get any work under the method of assigning work which he would be capable of doing physically, * * * I think it is a question for the merits, because I think very conceivably it could be held that such plaintiff would have a standing to sue as a person aggrieved if it is shown that to do the things that you say he should have done and that he admitted he did not, would have been a vain and useless thing because of the pattern or practice of discrimination, it seems to me that he would be a party aggrieved. That is a question for the merits.
 It does not appear what induced the trial judge to change his views in this respect when ruling on the subsequent motion for summary judgment. We agree with his earlier evaluation of the appellant's claim, as quoted above.
 
 
 [8]
 Rule 56(c), Fed.R.Civ.P
 
 
 [9]
 Another possible interpretation of the trial judge's action in granting summary judgment is that he took as true Boudreaux's contentions regarding his availability for light work, but nevertheless held that Boudreaux was not a person aggrieved. In our judgment this would be erroneous as a matter of law. In this respect we find the following analogy presented in appellant's brief persuasive:
 If the defendant employers had posted a sign reading "No Negroes will be hired for light work," it is inconceivable that Boudreaux would be held to have been obliged to go through the futile gesture of attending the shape-up in order to establish his status as a person aggrieved. [The result should not] be different merely because the employers' practice, although equally notorious, was less openly advertised.
 
 
 [10]
 Section 1981 provides:
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 
 
 [11]
 This contention was put before the trial court in the defendant Unions' answer to the intervenors' complaint. (App. 95)
 
 
 [12]
 This position was suggested by appellees in argument before the trial court (App. 141) and is presently urged on appeal
 
 
 [13]
 Waters v. Wisconsin Steel Works of Internat'l Harvester Co., 427 F.2d 476 (7th Cir. 1970)
 
 
 [14]
 Sanders v. Dobbs Houses, Inc., 431 F.2d 1097, 1099, 1100 (5th Cir. 1970)
 
 
 [15]
 Id., at 1100-1101. See Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1970). In Waters v. Wisconsin Steel Works of Internat'l Harvester Co., 427 F.2d 476 (1970), the Seventh Circuit held that because of the strong congressional policy favoring the use of conciliation techniques expressed in Title VII, a plaintiff seeking to bring suit directly under § 1981 must first show a "reasonable excuse" for failure to proceed by way of the Title VII mechanism. Even under theWaters formulation, however, appellant in the instant case would clearly be entitled to proceed under § 1981, having first submitted his claim to the EEOC, which then actually attempted the conciliation process.
 
 
 [16]
 Because appellees in the District Court argued that any § 1981 claim would be barred by the one-year statute of limitations applicable to tort claims in Louisiana, LSA-C.C. art. 3536, we herein state our view for the guidance of the court on remand that the applicable statute of limitations is rather the ten-year provision governing contract claims, LSA-C.C. art. 3544. It is, after all, the right to "make and enforce contracts" which is protected by § 1981See Waters v. Wisconsin Steel Works of Internat'l Harvester Co., 427 F.2d 476, 488 (7th Cir. 1970). Such suits, insofar as they seek equitable relief, are, of course, also governed by the equitable doctrine of laches and the requirement that the plaintiffs show the necessary degree of present or threatened future injury to support an equitable decree. However, to the extent that appellants here seek damages for loss of back pay, their claim would seem to be governed by LSA-C.C. art. 3534 which sets a one-year prescription on actions by "workmen * * * for the payment of their wages." See Hitzman v. Eythl Corp., 42 So.2d 155 (Ct.App.La.1949). Nevertheless, in the instant case, to the extent that either one-year statute (art. 3536 or art. 3534) is applicable, they were clearly tolled by Boudreaux's attempt to seek relief with the EEOC, which occurred some nine months after the accident which marked the last date at which he reported to a shape-up. See Culpepper v. Reynolds Metals Co., 421 F.2d 888, 891-893 (5th Cir. 1970).
 
 
 [17]
 See note 6, supra.