**Celio DIAZ, Jr., Plaintiff,**

v.

**PAN AMERICAN WORLD AIRWAYS, INC., and Transport Workers Union of America, AFL–CIO, Defendants.**

**Civ. No. 69–206.**

United States District Court,
S. D. Florida.

Aug. 10, 1972.

Eleanor. L. Schockett, of Kates, Ress, Gomez & Rosenberg, P. A., North Miami, Fla., for plaintiff.

James L. Armstrong, III, of Smathers & Thompson, Miami, Fla., and by Herbert Prashker, and Lawrence A. Katz, of Poletti Freidin Prashker Feldman & Gartner, as co-counsel, New York City, for Pan American World Airways, Inc.

Alan Greenfield, of Kovner, Mannheimer, Greenfield & Cutler, P. A., Miami, Fla., for Transport Workers Union of America, AFL-CIO.

Cynthia Gitt, E. E. O. C., Washington, D. C., for Equal Employment Opportunity Comm., as amicus curiae.

## MEMORANDUM OPINION

FULTON, Chief Judge.

### BACKGROUND

This cause comes before this Court on remand from the U.S. Court of Appeals for the Fifth Circuit, which, on April 6, 1971, reversed the judgment entered herein on April 24, 1970. Briefly, the history of this case is as follows: On April 17, 1967 the plaintiff, Celio Diaz, Jr., applied for the position of "flight cabin attendant" with defendant, Pan American World Airways, Inc. ("Pan Am"). His application was rejected because Pan Am had, since 1965, applied a policy of restricting new hiring for that position to females. Diaz then filed a charge under Section 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII" ; "The Act"), with the Equal Employment Opportunity Commission ("EEOC"), alleging that Pan Am had unlawfully discriminated against him on the grounds of sex. The EEOC having found probable cause, and conciliation attempts having failed, Diaz filed his complaint with this Court on February 14, 1969, on behalf of himself and all others similarly situated; he sought an injunction and damages.

In their pre-trial stipulation, dated September 19, 1969, the parties stipulated (1) that Diaz had applied and had been rejected for the cabin attendant position on the grounds that he was a male, (2) that other males had been rejected for similar reasons, (3) that Pan Am had, since 1965, followed a policy of not hiring males for the position, and (4) that the class of plaintiffs would consist "of males who have applied within the United States for positions as Pan American flight cabin attendants and have been rejected because of their sex." It was also stipulated that it is an unlawful employment practice under Title VII to refuse to hire any individual because of that individual's sex unless sex "is a bona fide occupational qualification reasonably necessary for the normal operation of that particular business." 42 U.S.C. § 2000e–2(e)(1). The mixed issue of law and fact for trial was then stipulated to be:

Whether being a female is a bona fide occupational qualification for the position of flight cabin attendant reasona-

bly necessary to the normal operation of defendant's business, within the meaning of 42 U.S.C. § 2000e–2(e)(1).

The trial was held on September 23–25, 1969 without a jury. The Air Transport Association of America, representing nearly all the certificated scheduled air carriers, the Transport Workers Union of America, representing Pan Am's cabin attendants, the Air Line Pilots Association, International, representing cabin attendants on several other airlines, and the EEOC all filed *amicus curiae* briefs.

On April 8, 1971, this Court filed its memorandum opinion incorporating the Court's findings of fact and conclusions of law (311 F.Supp. 559). The Court found that the experience of Pan Am, as well as other airlines which had employed both male and female cabin attendants over a number of years, was that, as a group, the females they hired generally performed the overall non-mechanical functions of the cabin attendant job better than the males they hired, and that, because of the great difficulty of identifying those few males who were as qualified for the position as most females, restricting cabin attendant hiring to females resulted in a greater statistical probability that the new-hire employee would be a successful employee than would a mixed male/female hiring policy. The Court then held that sex was a bona fide occupational qualification for the position of cabin attendant, reasonably necessary to the normal operation of Pan Am's business, and therefore that Pan Am's females-only hiring policy was not an unlawful discrimination on the grounds of sex under Section 703 of the Act.

An appeal was taken from this Court's judgment to the Court of Appeals for the Fifth Circuit. The Airline Stewards and Stewardesses Association filed an *amicus curiae* brief; the EEOC filed an *amicus curiae* brief and presented oral argument. On April 6, 1971, the Court of Appeals rendered its decision reversing the judgment of this Court and remanding the case for proceedings consistent with its opinion. 442 F.2d 385. The Court held that the bona fide occupational qualification exemption of Title VII required Pan Am to establish not merely that female cabin attendants generally perform better than males or that the addition of males to the hiring process would produce more unsatisfactory applicants and thus reduce the average level of performance, but rather that the essence of Pan Am's business would be undermined by not hiring females exclusively. Ruling (1) that "the primary function of an airline is to transport passengers safely from one point to another," (2) that the employment of male stewards will not "so seriously effect the operation of an airline as to jeopardize or even minimize its ability to provide safe transportation from one place to another," and (3) that the aspects of the job in which the females generally out perform the males are not "reasonably necessary to the normal operation" of Pan Am's business, the Court held that, while Pan Am was allowed to "take into consideration the ability of *individuals*" to perform the job, "Pan Am cannot exclude *all* males simply because most males may not perform adequately" (442 F.2d at 388).

On May 10, 1971, the Court of Appeals denied Pan Am's petition for rehearing, and on November 9, 1971, the Supreme Court denied Pan Am's petition for a writ of certiorari. Following the issuance of the Court of Appeals' mandate on November 18, 1971, this Court ordered counsel for both sides to confer with respect to further proceedings in this case and to attend a conference with the Court.

Hearings were thereafter held before this Court on January 4 and 27, 1972, during which the parties stated their respective positions regarding among other things, the relief to be accorded to the plaintiff and to the members of the class represented by him. The EEOC also appeared, as *amicus curiae*, and presented its position. At the conclu-

sion of the second hearing, the Court requested the parties to submit their respective proposed final orders by February 7, 1972. The Court also entered an order permitting the Transport Workers Union of America, AFL-CIO (TWU), "to intervene as a party defendant for the limited purposes of participating in the consideration and determination of the nature of relief that shall be accorded by the Court to the class of persons represented by the plaintiff." Proposed final orders and supporting memoranda and affidavits were thereafter filed by the parties and by the EEOC.

On March 31, 1972, a third hearing was held on the issues raised by the parties' proposals. On June 5, 1972, Pan Am filed an amended proposed order and supporting affidavit. On June 9, 1972, this Court filed a memorandum to counsel in which it announced general rulings on the issues which had not yet been resolved by negotiation and stipulation among the parties.

All the issues having now been resolved either by the Court or by the parties themselves, the Court now submits this memorandum opinion detailing the results of the proceedings on remand. The Court believes that its rulings, and the stipulations reached by the parties, which the Court approves and adopts, are consistent with the decision of the Court of Appeals, will further the objectives of Title VII, and will fully protect the rights and interests of all persons involved in these proceedings.

## RULINGS ON REMAND

Pan Am having been found in violation of the Act, the function of the Court at this stage of the proceedings is to determine the appropriate relief that should be accorded to the plaintiff and to the members of the class he represents. In this role, the Court is guided by Section 706(g) of the Act, 42 U.S.C. § 2000e–5(g), which provides, in part, as follows:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay . . . . .

The following determinations of the issues on remand, as will be indicated, are the result, in part, of stipulations among the parties and, in part, of rulings by this Court.

1. *Prospective Injunction.*

Pan Am has submitted substantial evidence to show that, immediately following the denial of its petition for a writ of certiorari, Pan Am began to modify its advertising, recruitment and selection policies in order to admit men to the hiring process; that by the middle of March 1972, Pan Am had already interviewed 2822 male applicants and had offered employment to 68 (compared to 2994 female applicants interviewed during the same period of whom 197 were offered employment)[1]; that almost all of these new-hire male cabin attendants have already completed their preliminary training; and that Pan Am is presently accepting, and intends to continue to accept, applications from males for the cabin attendant position. Nevertheless, the parties have rightfully agreed to the issuance of a prospective injunction under Section 706(g) of the Act, directing Pan Am to cease and desist from refusing to hire males as flight cabin attendants on the basis of their sex, and this Court shall issue such an Order.

[1]. It is reasonable to expect that the percentage of male applicants hired will be smaller than the percentage of females hired because, as this Court found after trial, fewer men than women are qualified for the position (see 311 F.Supp. at 568); this finding was not disturbed on appeal (see 442 F.2d at 388).

## 2. *The Group Entitled to Preferential Consideration.*

Determination of the appropriate affirmative relief that should be directed in favor of males who applied and were rejected for cabin attendant employment in the past has occupied the major portion of these proceedings on remand. The parties are in general agreement (1) that *some* members of the plaintiff class on whose behalf this action was tried are now entitled not only to consideration for future hire in the ordinary course, but to preferential consideration for hire and, under conditions described hereafter, to damages in the form of back pay from the time they would have been employed except for their sex, and (2) that membership in this "preferred" group should be limited, at least, to those individuals who filed written applications for cabin attendant employment between two dates certain, or who, as of the later date, had pending with the EEOC, or a state or local agency having or purporting to exercise jurisdiction over claims of discrimination in employment because of sex, timely charges complaining of Pan Am's refusal to consider them for hire as cabin attendants because of their sex.

The parties agreed, by stipulation dated April 4, 1972, that males who filed their initial applications for employment after November 18, 1971 (the date of the Court of Appeals' mandate to this Court following denial of the petition for certiorari) should not receive preferred consideration[2] ; but the parties were unable to reach further agreement on the criteria for membership in the "preferred" group. The plaintiff contended that the "preferred" group should include all males who filed written applications between July 2, 1965 (the effective date of the Act) and November 18, 1971; this position was supported by the EEOC. Defendant Pan Am, joined by defendant TWU,

contended that the "preferred" group should include only those who applied between November 16, 1968 (ninety days prior to institution of this action) and April 24, 1970 (the date this Court's judgment was entered). Defendants' position was based upon Section 706(d) of the Act, 42 U.S.C. § 2000e–5(d), which provides that "a charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred    . . ." Pan Am argued that any individuals whose own complaints would have been barred as untimely under this Section at the time this action was instituted by plaintiff Diaz on their behalf should not now be entitled to preferential consideration for hire and back pay.

██ The time provision which controls the establishment of the group entitled to preferential treatment is set forth in Sections 706(d) and (e) of the Act. The established law of this Circuit is that there are only two jurisdictional prerequisites to an action in federal court under Title VII: (1) a prior opportunity for the EEOC to resolve the charge through voluntary conciliation; and (2) the filing of a suit within 30 days after receipt of the EEOC notice of entitlement to sue. Boudreaux v. Baton Rouge Marine Contracting Co., 437 F.2d 1011, 1014 n. 6 (5th Cir. 1971); Beverly v. Lone Star Lead Construction Corp., 437 F.2d 1136, 1139–1140 (5th Cir. 1971); Hutchings v. United States Indus., Inc., 428 F.2d 303, 309 (5th Cir. 1970); Dent v. St. Louis-San Francisco Ry. Co., 406 F.2d 399, 403 (5th Cir. 1969). A plaintiff under Title VII, as a condition precedent to seeking judicial relief, must file a charge with the EEOC so that the EEOC may have a prior opportunity to resolve the charge through voluntary conciliation. Boudreaux v. Baton Rouge Marine Contraction Co., *supra*, 437 F.2d at 1014 n. 6;

---

**2.** Such employees, by virtue of the change in Pan Am's hiring practices which then occurred, were not disadvantaged because

of their sex in being considered for vacancies in Pan Am's cabin attendant training classes.

Beverly v. Lone Star Lead Constr. Co., *supra*, 437 F.2d at 1139; Miller v. International Paper Co., 408 F.2d 283, 291 (5th Cir. 1969). Compare Love v. Pullman Co., 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), in which the Supreme Court held that the purpose of § 2000e–5(d) is "to ensure expedition in the filing and handling of [discrimination] complaints" (*id.* at 619). A plaintiff must commence a civil action within 30 days after receiving notice from the EEOC of his right to sue, and failure to file the complaint within 30 days bars the action under Title VII of the Civil Rights Act of 1964. Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970), cert. denied, 401 U.S. 948, 91 S. Ct. 935, 28 L.Ed.2d 231 (1971); Boudreaux v. Baton Rouge Marine Contracting Co., *supra*, 437 F.2d at 1017.

██ The plaintiff in this cause has complied with the jurisdictional prerequisites for suit. Class membership in this cause is governed by Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968) and Miller v. International Paper Co., *supra*. *Oatis* held that membership in a class action brought under § 2000e–5(e) is not restricted to individuals who have filed charges with the EEOC. Thus, "once an aggrieved person raises a particular issue with the EEOC which he has standing to raise, he may bring an action for himself and the class of persons similarly situated" (398 F.2d at 498). The filing of charges with the EEOC is not a prerequisite for other members in a class action where one plaintiff has complied with the procedural requirements of the Act (*id.* at 499; Miller v. International Paper Co., *supra*, 408 F.2d at 284). Therefore, it is the ruling of this Court that the establishment of the "preferred" group in this cause must commence with the date of the plaintiff's filing of a charge with the EEOC alleging a denial of his rights under Title VII of the Act (April 17, 1967), without regard to whether other members of the class filed charges with the EEOC after that date, and shall continue to and include the date of entry of this Memorandum Opinion.

3. *Hiring Procedures and Criteria Applicable to "Preferred" Group.*

██ It is likely that *some* members of this "preferred" group would have been hired at the time they originally applied, except for their sex; however, as evidenced by the proof at trial that Pan Am hired only approximately one in 25–30 female applicants interviewed for the position (see 311 F.Supp. at 566), only a very small fraction of male applicants would have been hired even if they had been considered for the job. All of the males who applied for the job during the period April 17, 1967 to the date of entry of this Order and who were rejected solely on the basis of sex are now entitled to have their applications considered ahead of other applicants for the position, and they are entitled to be hired with back pay if, as a result of such consideration, they can establish that they would have been among the relatively small proportion of applicants who would have been hired, *but for their sex*, at the time of their original applications and that they were financially disadvantaged by not having been hired at such time. The parties have stipulated the procedure by which this determination is now to be made. Pan Am is to reconsider such applications which were rejected solely on the basis of sex pursuant to the same hiring procedures (including the offer of interviews) and the same hiring criteria which were, at the time of such applications, customarily applied by Pan Am to females seeking employment as cabin attendants, except that Pan Am is to apply to such male applicants the height and weight standards established by Pan Am as criteria for continued employment by male stewards at the time of said applications.

The parties have stipulated that, on the basis of the applicable hiring procedures and criteria, Pan Am shall be required to offer to all members of the "preferred" group who would have been hired as flight cabin attendants at the

time of their applications, except for their sex, in proximate order of the date of filing their applications, the first available vacancies in Pan Am flight cabin attendant training classes, and subsequent employment in such position, provided that at the time of said offer and thereafter, they continue to meet Pan Am's standards for continued employment in such position; that each such male who accepts Pan Am's offer of employment shall, for purposes of computation of pay and pension benefits and contributions, be deemed to have been employed as a flight cabin attendant as of the commencement of the first class of flight cabin attendant trainees following his original application, had he been employed in such position, except for his sex.

■ The parties differed as to whether the members of the "preferred" group actually hired should, for other purposes (including, but not limited to, seniority for promotion and bidding for assignments) be deemed to have been hired as of the time of their earlier applications or as of the date of their actual hire; the Court has determined, on equitable and practical grounds, that, except for the purposes of computation of pay and pension benefits and contributions, the hired males in the "preferred" group shall be deemed to have commenced such employment as of the date upon which they actually begin flight cabin attendant training. To do otherwise, and to award these plaintiffs seniority for other purposes ahead of employees who have, by actual service in the cabin attendant position as junior employees, been required to take the least desirable assignments for the period necessary to acquire rights to bid for more desirable ones, would be inequitable and unjust to the latter, would demoralize incumbent employees, and would cause difficulty in the labor-management relations of Pan Am. Moreover, if these "preferred" plaintiffs had been hired at the time of their original applications, they would have been re-quired, like all other Pan Am cabin attendants, to accept less desirable assignments until their service gave them access to more favorable ones. It is not inequitable that they be required to do so now.

The Court finds that, in anticipation of this Court's order, Pan Am has already reviewed the applications filed by males between November 16, 1968 and April 24, 1970 pursuant to the then-existing hiring procedures and criteria, has sent rejection letters to those males whose applications indicated that they would not have satisfied the applicable minimum qualifications, has extended invitations for personal interviews to those applicants who apparently would have satisfied such qualifications, has interviewed males who responded affirmatively to its invitations, and has offered employment to applicants it deemed qualified. Therefore, this Court rules that, subject to the right of such persons to file objections to the actions of Pan Am in the manner specified hereafter, Pan Am will not be required (1) to again reconsider for hire as a cabin attendant any member of the "preferred" group whose application has, since January 1, 1972, already been reconsidered and rejected pursuant to the applicable criteria and not solely on the basis of sex, (2) to offer a further personal interview to any member of the "preferred" group who, since January 1, 1972, has already been given such an offer pursuant to the applicable criteria and who has not responded to such offer, and (3) to further consider the application of any member of the "preferred" group from whom Pan Am has not received or hereafter does not receive a response to its offer of a personal interview sixty (60) days from the date of mailing of such offer to said male's address as shown on his application.

This Court rules that plaintiff Diaz, who filed his complaint with the EEOC on April 17, 1967, will be a member of the class which is entitled to preferen-

tial consideration under the terms stated in Part 3 above. He will not be accorded any other special consideration.

### 4. Back Pay.

■ In respect of back pay damages, Pan Am shall pay to all males in the "preferred" class who would have been hired at the time of their initial application, except for their sex, and who accept Pan Am's offers of employment and satisfactorily complete the training program and probationary period for flight cabin attendants, an amount of money equal to that which they could reasonably have been expected to earn in base pay (excluding expenses) as Pan Am stewards from the date they would have been placed on Pan Am's payroll following their initial application to the date they are hereafter placed on said payroll, less what they actually earned from other employment or received as unemployment insurance during the same period.

### 5. Plaintiffs' Right to File Objections.

The parties have agreed as follows on the procedures which shall be followed in the event of disagreement as to whether a member of the "preferred" group should have been offered employment or a greater amount of back pay: that any members of the "preferred" group who are not hereafter offered employment, or who are offered employment but who believe that they are entitled to a greater amount of back pay than that offered by Pan Am, may file with this Court their objections to Pan Am's failure to offer employment or to offer satisfactory back pay within sixty (60) days following the date of mailing of notice of same or following the date of entry of the order containing the rulings announced herein, whichever is later; that such objections shall be submitted in writing and verified, with proof of service upon defendant Pan Am, shall contain the name and docket number of this action, and shall include specific allegations as to how Pan Am has failed to comply with the terms of the aforesaid order and what relief is sought.

### 6. Appointment of Special Master.

Exceptional conditions exist in this case justifying the appointment of a Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure to determine the aforesaid objections. It has been stipulated by Counsel for the parties that the Court should appoint Horace F. Cordes as such Special Master with jurisdiction and authority to conduct such hearings and make findings of fact and report the same to the Court with all due speed. It has also been stipulated that such findings and conclusions shall be final and binding upon the parties to this action except where the findings are clearly erroneous. The said Special Master shall be paid as a fee the sum of $250.00 per day for each five hour working day reasonably spent in reviewing the files, arranging for hearings, conducting the hearings and determining the objections and filing reports thereon, together with expenses and court costs, all of which shall be paid in the first instance by Pan Am.

Any male applicant filing such an objection shall at the time of filing deposit the sum of $25.00 with the Clerk of this Court to be applied against the said court costs and Special Master's fee in the event his objection is not finally sustained, and in the event his objection is not sustained, the objectant shall pay to Pan Am one-half of the Special Master's fees and expenses and court costs, if any, for the hearing and disposition of said objection, and Pan Am shall have the right to sue to recover the same in any court of competent jurisdiction.

In order for the Special Master to properly and fully perform his function, the Court shall require Pan Am to keep certain records concerning each member of the "preferred" group, so that if and when there are objections filed by such persons as provided above, such records will be available. These records should include the following:

(1) Copies of the applications filed by males in the "preferred" group dur-

ing the period April 17, 1967 to the date of entry of this Order.

(2) The beginning date of the training class in which each such applicant would have been entered if his application, filed during the aforesaid period, had been routinely accepted.

(3) The hiring procedures and criteria applicable to each application at the time it was filed and at the time it was reviewed pursuant to the Order entered herein.

(4) The base pay for cabin attendants from April 17, 1967 until all the applications of members of the "preferred" group have been processed.

(5) Whether each such applicant was personally interviewed and the results thereof.

(6) The reasons for rejection of any such applicants.

(7) The date upon which final action was taken and notice thereof given in respect of such applicants.

(8) The standard of performance required of each such applicant who enters the training and probationary periods, both at the time he would have entered such periods had his application been routinely accepted and at the time he actually enters such periods, to the extent that such records are currently available.

(9) The reasons for failure of any such applicant to satisfactorily complete a training or probationary period.

The parties have stipulated that, within six months from the date of the Order to be entered herein, Pan Am shall be required to file with this Court a statement of the disposition by Pan Am of all applications filed by persons within the "preferred" group, and that this Court will retain jurisdiction of this action in order to receive and take appropriate action upon the Special Master's report and to award appropriate attorneys' fees and costs.

If a party is dissatisfied with and desires to appeal the rulings of the Court announced in this memorandum opinion, implementation thereof will be deferred until an appeal has been effected and further decision received from the Court of Appeals. This can be accomplished by the Court certifying this memorandum opinion pursuant to 28 U.S.C. § 1292(b). In the event of such certification, the procedures for review by the Special Master will be deferred until after the appellate court has spoken, thus avoiding possible repetitious reviews and expenses.

Pan Am shall mail a copy of this Order and a letter-notice clearly and succinctly stating the applicant's rights and how he may proceed to enforce them within thirty (30) days from the date of entry of the final judgment to each male in the "preferred" group (i. e. male applicants rejected solely on the basis of sex who applied between April 17, 1967, and the date of entry of this Order) to the most recent address of said male found in Pan Am's records. A copy of Pan Am's letter-notice shall be filed with this Court prior to mailing the same to the class.

Final judgment will be entered within 10 days from the entry of this Order, unless the Court receives written notice from one or more of the parties that it wishes this memorandum opinion certified under 28 U.S.C. § 1292(b).