**Richard A. SIMS et al., Plaintiffs,**

**v.**

**The ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA et al., Defendants.**

**Civ. A. No. 71-2017-G.**

United States District Court, D. Massachusetts.

May 30, 1972.

Michael J. Hoare, Boston, Mass., for plaintiffs.

Philip W. Riley, Badger, Parrish, Sullivan & Frederick, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION ON MOTION TO DISMISS

GARRITY, District Judge.

Defendants' motion to dismiss in this case raises complex questions concerning the scope of relief available under the Civil Rights Act of 1866, specifically 42 U.S.C. §§ 1981, 1982. Plaintiffs Sims and Tyler are black citizens of the United States and are employed as police officers by the city of Lynn, Massachusetts. Their wives, likewise black citizens, are joined as the intended beneficiaries under life insurance policies which are the subject matter of this dispute. Plaintiff Enid Bernice Sport is the widow and intended beneficiary of Louis Sport, now deceased; both Mr. and Mrs. Sport are black. As characterized in the complaint, defendant Order of United Commercial Travelers of America (hereinafter U.C.T.) is an Ohio corporation which "holds itself out as the 'world's largest fraternal accident insurance society' whose primary func-tion is to offer its participants the 'finest insurance available.' " The other defendants are U.C.T.'s president and the secretary-treasurer of its Lynn, Massachusetts, Local Council No. 466.

The complaint alleges (1) that plaintiffs Sims and Tyler and Louis Sport made application for membership in Local Council No. 466 and for insurance, each naming his wife as intended beneficiary; (2) that each, at the time he made application "met the objective qualifications (e. g., age, moral character and health) required by defendant U.C.T. of white persons in its insurance programs"; (3) that their applications were rejected; and (4) that the sole reason for rejecting these applications is the race of the applicants. They argue that this deprives them of the rights "to make and enforce contracts" and to purchase property as are guaranteed, respectively, under 42 U.S.C. § 1981 and § 1982.

Although the point was neither raised in defendants' motion to dismiss nor adverted to in the supporting memorandum, counsel for the U.C.T. represented to the court at the hearing that the organization has a social and fraternal function, that a "non-insured" or "fraternal" membership is available, and that social functions including dinners and card parties are held by the local councils. Counsel also stated that membership is prerequisite to the purchase of insurance. He indicated, however, that one application covers both membership and insurance and that the majority of the members are insured.

■■ If the U.C.T. is in fact a private fraternal order, the availability of inexpensive life insurance being a mere incident or benefit of membership therein, plaintiffs' grievance is based not on defendants' refusal to sell them insurance but rather on defendants' refusal to admit them to membership. And if this is the case, we know of no authority for the proposition that membership in a private organization may be secured by

suit under the civil rights statutes.[1] As a matter of pleading, however, plaintiff asserts that the U.C.T. is primarily a seller of insurance rather than a fraternal order. The facts that a majority of the members are insured and that one form is sufficient to apply for both membership and insurance support this proposition. It is clear that the civil rights statutes may not be circumvented ·by the ruse of denominating "private" that which is truly "public." See Smith v. Young Men's Christian Association of Montgomery, M.D.Ala., 1970, 316 F. Supp. 899, 910–911. By the same logic, racially-based refusal of admission to an amusement park, held actionable under § 1981 (right to contract) in Scott v. Young, 4 Cir., 1970, 421 F.2d 143, is not redeemed by the allocation of a portion of the admission fee toward the purchase of a "membership" in the park. We do not speculate whether the realities here are similarly sufficient to support a claim; it is so pleaded, and resolution of the issue is a matter for discovery by plaintiffs, not conjecture by the court.

■■ Turning to the four grounds advanced by defendants in their motion to dismiss, only two go to the substance of the complaint. Defendants argue that relief under § 1981 is unavailable against purely private discrimination and that the insurance "contracts" sought to be effected do not constitute or embody "property" rights for purposes of § 1982. Both of these positions are patently untenable. It is true, as defendants suggest, that the leading decision construing the Civil Rights Act of 1866 and applying it to private discrimination, Jones v. Alfred H. Mayer Co.,

1968, 392 U.S. 409, 88 S.Ct. 2186, 20 L. Ed.2d 1189 arose in the context of a sale of real property and therefore was brought under § 1982.[2] However, the discussion of legislative intent upon which that decision is premised focuses upon the whole of § 1 of the 1866 Act, from which both sections 1981 and 1982 ultimately were derived. The rights protected therein, not only the right to purchase and hold property but also the right to make and enforce contracts which ultimately was acknowledged and protected in § 1981, are not distinguished; both were considered "great fundamental rights" by the legislators who passed the Act. Jones v. Alfred H. Mayer Co., *supra* at 432, 88 S.Ct. 2186. The fact that § 1981 shares a common ancestor with § 1982 in the original § 1 was emphasized by the court in Waters v. Wisconsin Steel Works of International Harvester Company, 7 Cir., 1970, 427 F.2d 476, 481–484. That court applied § 1981 to purely private discrimination, and other circuits have reached the same result. See Scott v. Young, *supra* 421 F.2d at 145; Sanders v. Dobbs House, Inc., 5 Cir., 1970, 431 F.2d 1097. We believe it is the applicable rule in this case as well.

Defendants' unwillingness to recognize a property right involved in a contract for the purchase of insurance which would be cognizable under § 1982 apparently rests on the following logic drawn from their supporting memorandum: "If Section 1982, dealing with discrimination relative to real and personal property had been intended to protect the right to contract, then the very wording of Section 1981, extending protection 'to make and enforce contracts'

1. Sullivan v. Little Hunting Park, Inc., 1969, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 is not contra. There, membership shares in a nonstock recreational corporation were held by the owners of specific real property and were assignable to lessees of that property. Thus, the shares themselves were assignable "property"; they might also be viewed as incidents of ownership in the real property with which they were

associated. Generally, membership in a fraternal organization or country club is not assignable property in the possession of the member.

2. 42 U.S.C. § 1982 provides that "all citizens of the United States shall have the same right . . . as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

is rendered meaningless and superfluous." Without intimating any view as to the scope of § 1981, it would seem at least plausible that a racially motivated refusal to enter into a contract for the sale of real estate might be actionable under both sections. Be that as it may, we believe that the purchaser of a life insurance policy makes an investment decision whereby he purchases a promise to pay his designated beneficiary on the event of his death. That promise to pay is "property" of substantial value to the purchaser, see 43 Am. Jur.2d § 197, within the meaning of § 1982.

Defendants further argue (1) that relief is unavailable to these plaintiffs for failure to meet the applicable statute of limitations and (2) that relief is unavailable to the wives of the rejected applicants for want of an interest sufficient to confer standing to participate in this suit.

The civil rights statutes make no provision for a statute of limitations. We therefore are required to identify and apply the limitation period applicable to the most analogous state law claim. See Waters v. Wisconsin Steel Works of International Harvester Co., *supra*, 427 F.2d at 488. Absent any analogous state claim, the federal court must apply a state's general statute of limitations, if any. See Lazard v. Boeing Company, E.D.La., 1971, 322 F.Supp. 343, 346.

Massachusetts has no general statute of limitations, specific statutes having been provided for specific claims. The parties have failed to identify an analogous private remedy against discrimination under the Massachusetts law and the court is aware of none. We reject defendants' contention that we must apply the time limitations set out in the fair labor practices provisions of Mass. G.L. c. 151B. Although providing a grievance procedure directed against unlawful discrimination, the remedy is administrative, not judicial, and is in no

meaningful way analogous to the claims advanced here.

Of the statutes of limitations provided for judicially cognizable claims, defendants contend that the two-year period for the commencement of tort actions provided under Mass.G.L. c. 260, § 2A, is applicable, asserting that the complaint claims something akin to personal injury suffered by plaintiffs by reason of defendants' acts. Plaintiffs suggest either that defendants are engaged in a continuous pattern of discrimination not subject to a specific period of limitations or that, since what is in part at issue here is defendants' refusal to contract with plaintiffs, the six-year limitation period for contract actions provided under Mass.G.L. c. 260, § 2, is appropriate. While recognizing that neither of these statutes is precisely applicable, we note that other courts in employment discrimination cases under § 1981 have applied the statute of limitations for contract actions. See Boudreaux v. Baton Rouge Marine Contracting Company, 5 Cir., 1971, 437 F.2d 1011, 1017 n. 16; Page v. Curtiss-Wright Corporation, D. N.J., 1971, 332 F.Supp. 1060, 1065. Writing in *Boudreaux*, Judge Wilkey remarked, "It is, after all, the right to 'make and enforce contracts' which is protected by § 1981." 437 F.2d at 1017, n. 16. It is the court's view that the contract analogy is most apt here and that, alleged discriminatory refusals to sell insurance having occurred on June 27, 1969, October 23, 1970, and December 8, 1970, this suit was filed well within the six-year statutory period under Mass.G.L. c. 260, § 2.

Finally, turning to the claims asserted by the wives of the rejected applicants, we find that they enjoy no rights which are protected under § 1981 or § 1982. Clearly, there is no question here of a contract sought to have been "made" or "enforced" by them. Nor did they seek to "purchase," "lease," "sell," or "convey" property. In this state, as in most states, insurance proceeds are not "inherited" by a beneficiary. See

Gould v. Emerson, 1868, 99 Mass. 154. We do not construe the right to "hold" property under § 1982 to include a right to require a third party to convey property to the aspiring holder's prospective transferor (i. e., in this case, to a plaintiff wife's police officer husband). In our opinion such "prospects" and "aspirations" do not reach the level of a protectable property interest.

Accordingly, defendants' motion to dismiss is allowed as to plaintiff wives Enid Bernice Sport, Ethel L. Tyler and Joan Sims. It is denied as to plaintiff police officers Richard A. Sims and Charles L. Tyler, Jr.