632 F.2d 309
 Thomas WRIGHT, Jr., D.D.S., and Barbara B. Wright, Appellants,
v.
The SALISBURY CLUB, LTD., a Virginia corporation; Thomas J.
Hampton; Frank G. Dolezal; Knox W. Ramsey; W. Larry Wallace;
Raymond R. Beasley; Richard L. Carleton; Frank N. Cowan;
Albert J. Dean; John T. Doherty; Nancy Phillips; Jack
Sawyer; Charles P. Williams, Each of Whom are sued
individually and in their official capacity as Directors of
the Salisbury Club, Ltd., Appellees.
United States, Amicus Curiae.
National Club Association, Amicus Curiae.
Conference of Private Organizations, Amicus Curiae.
 No. 79-1768.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 4, 1980.
Decided Sept. 29, 1980.
 
 Allison W. Brown, Jr., Washington, D. C. (Arthur F. Samuel and Robert A. Pustilnik, Richmond, Va., on brief), for appellants.
 James M. Minor, Jr., Richmond, Va. (Minor, Marshall, Forb & Batzli, P. C., Donald W. Lemons, Parker, Pollard, Brown, Froman & Lemons, Inc., Richmond, Va., on brief), for appellees.
 Carol E. Heckman, Dept. of Justice, Washington, D. C. (Drew S. Days, III, Asst. Atty. Gen., Walter W. Barnett, Dept. of Justice, Washington, D. C., on brief), for The United States as amicus curiae.
 Robert A. Yothers, Seattle, Wash., on brief, for Conference of Private Organizations as amicus curiae.
 Thomas P. Ondeck, Baker & McKenzie, Washington, D. C., on brief, for National Club Association as amicus curiae.
 Before WINTER and HALL, Circuit Judges, and KIDD,* District Judge.
 WINTER, Circuit Judge:
 
 
 1
 The plaintiffs, Thomas Wright and Barbara Wright,[1] sued the Salisbury Club[2] under 42 U.S.C. §§ 1981 and 1982 for denying them club membership because they are black. Although it found that the Wrights had been denied club membership because they were black, the district court denied them relief under § 1981, because it concluded that the Salisbury Club was a truly private club, and under § 1982, because it concluded that membership in the club was not "property" for the purposes of that statute. On both issues, we conclude to the contrary and we therefore reverse.
 
 I.
 
 2
 The Salisbury Club, located near Richmond, Virginia, was established in 1963 by the developer of the adjacent Salisbury subdivision.[3] It is a privately-owned club which provides tennis, swimming, golf, and dining facilities for the use of its members. At first, residents of the Salisbury subdivision were formally given preference for membership in the club. In recent years the preference has been abolished to permit the club to attract new members without limitation. Currently, somewhat over half the members reside in the Salisbury subdivision, and until 1977, no resident of the Salisbury subdivision had been denied membership.
 
 
 3
 In May, 1977, the plaintiffs moved into a house that they had purchased in the Salisbury subdivision. Soon after moving, the plaintiffs twice applied for membership in the Salisbury Club. Their applications were sponsored by two club members, as required by club bylaws. On both occasions, the plaintiffs' applications were rejected. It is conceded that the plaintiffs were denied membership because they are black.
 
 
 4
 The plaintiffs then brought suit in district court, seeking injunctive relief and damages for denial of civil rights guaranteed by 42 U.S.C. §§ 1981 and 1982. Subsequently, the district court granted summary judgment for the defendants. After examining the club's formation, membership policies, and membership recruitment activities, the district court found that the Salisbury Club was a "truly private" club.[4] The district court ruled that § 1981 does not apply to truly private clubs and therefore rejected the plaintiffs' § 1981 claim.
 
 
 5
 In addition, the district court rejected the plaintiffs' § 1982 argument. It examined the connection between the subdivision and the club, and discovered no formal link between club membership and ownership of a home in the subdivision. Consequently, it concluded that membership in the club did not amount to "property" within the ambit of § 1982.
 
 
 6
 The critical facts of this case are undisputed, and we do not disagree with the factual findings made by the district court. We do disagree, however, with the court's application of §§ 1981 and 1982 to those facts. In our view, the characteristics of the Salisbury Club demonstrate that it is not a truly private club and the close connection between club membership and ownership of subdivision property establishes that club membership is "property" within the meaning of § 1982. Because we reverse the district court's §§ 1981 and 1982 rulings, we do not consider its decision that §§ 1981 and 1982 are subject to a "private club" defense.[5] We think it unnecessary to give extended treatment to its possible ruling that the constitution requires that "private" social organizations be free from governmental regulation of their membership policies.[6]
 
 II.
 
 7
 We consider first plaintiffs' claim under § 1981. That section guarantees to "all citizens" the same "right to make and enforce contracts ... as in enjoyed by white citizens." The club concedes that it refused to contract with the plaintiffs for membership because they are black. The club's only defense is that it is a truly private club immune from liability under § 1981.
 
 
 8
 The district court agreed with the club that it was truly private. As the district court recognized, the Supreme Court has never determined whether genuinely private organizations are outside the reach of § 1981. In three decisions the Supreme Court has avoided that issue by finding that the private organizations before it were not truly private. Runyon v. McCrary, 427 U.S. 160, 172 n.10, 96 S.Ct. 2586, 2595, 49 L.Ed.2d 415 (1976); Tillman v. Wheaton-Haven Recreation Ass'n, 410 U.S. 431, 438-39, 93 S.Ct. 1090, 1094, 35 L.Ed.2d 403 (1973); Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 236, 90 S.Ct. 400, 404, 24 L.Ed.2d 386 (1969). We, like the Supreme Court, find it unnecessary to determine whether § 1981 is subject to a "private club" defense, because in this case, we are persuaded that, for three reasons, the Salisbury Club is not a truly private club.
 
 
 9
 First, the Salisbury Club does not follow a selective membership policy. Only three white persons have ever been denied membership in the Salisbury Club, and they all resided outside the Salisbury subdivision. Conversely and most critically for this case, no white resident of the Salisbury subdivision has been denied club membership throughout the entire history of the Salisbury Club. The only residents of the subdivision who have been denied membership are the plaintiffs and another black family who applied for membership at about the same time. They were admittedly refused membership because of their race. Thus, it is apparent that the club follows "no plan or purpose of exclusiveness." Rather, membership "is open to every white person within the geographic area, there being no selective element other than race." Sullivan v. Little Hunting Park, 396 U.S. at 236, 90 S.Ct. at 404. See also Runyon v. McCrary, 427 U.S. at 172 n.10, 96 S.Ct. at 2595.
 
 
 10
 The district court was persuaded of the club's supposed selectivity by the formal requirements for membership.[7] All applicants must have two members sponsor their applications. Then, the applicant must be approved by the membership committee. Finally, seventy-five percent of the board of directors must vote to admit the applicant to membership.
 
 
 11
 These formal membership requirements, however, do not prove that the Salisbury Club is a truly private club because in practice the club admits all white subdivision residents and practically all white applicants from outside the subdivision. The formalities have little meaning when in fact the club does not follow a selective membership policy. See Tillman v. Wheaton-Haven Recreation Ass'n, 410 U.S. at 433, 438-39, 93 S.Ct. at 1094 (club found not genuinely private even though club membership was contingent upon approval of a majority of those present at a meeting of the board of directors or the general membership). We find the actions of the Salisbury Club far more convincing than its written procedures.
 
 
 12
 Second, the Salisbury Club has actively solicited members through public advertising. The club has made extensive efforts to draw residents of the Salisbury subdivision into its membership. In November, 1975, the club inserted an announcement in the Salisbury Village Crier, a newsletter distributed by the subdivision developer to Salisbury residents. The ad was entitled "Notice to All Salisbury Residents". It invited the readers to "take advantage of a great opportunity" in the form of reduced initiation fees during a membership drive, and it concluded by asking, "Why not join us at the Salisbury Club?" In addition, the club has tried to recruit Salisbury residents by welcoming them in the subdivision property buyers guide, by participating in a hospitality program for new Salisbury residents, and by distributing membership application forms to real estate salesmen. Furthermore, the developer who established the club advertises club membership as one of the attractions of living in the subdivision.
 
 
 13
 Clearly, the Salisbury Club's recruitment activities are not those of a truly private club. Through the real estate developer who set up the club and created the subdivision, club membership has been advertised beyond the bounds of the subdivision. Particularly relevant to this case, the club represents itself as open to all residents of the Salisbury subdivision and has diligently tried to lure all subdivision residents onto its membership rolls. This extensive advertising belies the club's attempt to characterize itself as a truly private club. See Runyon v. McCrary, 427 U.S. at 172 n.10, 96 S.Ct. at 2595.
 
 
 14
 Third, from its inception, the club has served the commercial interests of the developer of the Salisbury subdivision. The club was created on the initiative of J. Kenneth Timmons, president of the Salisbury Corporation which developed the subdivision. The master plan of the subdivision included a country club, and in 1963 the corporation conveyed to the club the original parcel of land on which the club was built. In order to insure that the club aided its efforts to promote the subdivision, the developer provided that ample memberships would be reserved for Salisbury residents by requiring in the deed that no more than 200 family memberships would be granted to families residing outside the subdivision.[8] In 1968, the corporation continued to promote the subdivision through the country club by conveying land for a golf course. This close relationship between the commercial aims of the developer and the club's operations is reflected in the fact that Timmons served as one of the original incorporators of the club, as president of the club and in other official club positions.[9]
 
 
 15
 The developer has made every effort to inform prospective purchasers of the club's benefits. The developer and its real estate agent[10] refer to club facilities in advertisements for subdivision property. Salesmen often entertain prospective purchasers at the club and use slide presentations which include views of the club and its golf course. Purchasers of subdivision property are again introduced to the club through a letter in the Salisbury Property Buyers Guide and through membership recruitment materials distributed through real estate agents.
 
 
 16
 This intimate, longstanding, and continuing relationship between the subdivision developer and the Salisbury Club completely undercuts the club's contention that it is truly private. From its creation, the club has served the commercial interests of the developer. It is true that the club has eliminated the reservation of memberships for subdivision residents contained in the original deed, but this policy was changed only because the club had a financial need to attract new members. The club has not reduced its emphasis upon recruiting subdivision residents, and it continues to cooperate with the developer to promote the subdivision.
 
 
 17
 In sum, the club has no selective membership policy; it advertised extensively within the subdivision for new members and permits the subdivision developer to advertise the club's existence throughout the Richmond area; and it has since its inception been an important part of the subdivision developer's marketing efforts. Singly, any one of these characteristics belies the club's claim that it is a genuinely private organization. In combination, they demolish the club's "truly private" defense. As a result, the club has no response to the plaintiffs' claim that it violated § 1981 when it denied the plaintiffs membership because they are black.III.
 
 
 18
 Next we consider plaintiffs' claim under § 1982. That statute insures that all citizens will have the same right "as is enjoyed by white citizens" to purchase and hold "real and personal property." See generally Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). We repeat that it is conceded that the club refused to sell the plaintiffs a club membership because they are black, so that the only issue is whether a club membership is "property." The district court ruled that club membership does not amount to "property."[11] We disagree and conclude that membership in the Salisbury Club is part of the bundle of rights bought by a purchaser of a home in the Salisbury subdivision.[12]
 
 
 19
 The Supreme Court has decided two cases which present facts similar to the facts of this case. Tillman v. Wheaton-Haven Recreation Ass'n; Sullivan v. Little Hunting Park, Inc. In both cases, the Supreme Court decided that racial discrimination in club membership policies violated § 1982 because club membership was closely associated with property ownership in a particular geographic area. The district court decided that the facts in Sullivan and Tillman were distinguishable from the facts of this case and that as a consequence the plaintiffs had not suffered a violation of § 1982. Contrary to the district court, we conclude, under Sullivan and Tillman, that the Salisbury Club ran afoul of § 1982 when it refused to accept the plaintiffs' membership applications.
 
 
 20
 In Sullivan, Little Hunting Park operated a playground and a park for residents of a portion of Fairfax County, Virginia. The park bylaws provided that a member who rented his home could assign his membership to a tenant, subject to the approval of the board of directors. An area homeowner rented his home to a black tenant and attempted to assign the tenant his membership. The park board refused to approve the assignment.
 
 
 21
 The Supreme Court found that the right to assign a tenant park membership fell within the terms of § 1982. The Court identified the property interest conveyed as a leasehold of realty coupled with a membership share in a park organized for the benefit of owners and lessees of rental property in a designated residential area. 396 U.S. at 236, 90 S.Ct. at 404. Rejecting the defendants' contention that this transaction did not constitute a "lease" within § 1982, the court stated: "A narrow construction of the language of § 1982 would be quite inconsistent with the broad and sweeping nature of the protection meant to be afforded by § 1 of the Civil Rights Act of 1866 (the source of § 1982) ...." Id. at 237, 90 S.Ct. at 404.
 
 
 22
 Four years later in Tillman, the Court confronted a club closely analogous to the Salisbury Club. The Wheaton-Haven Recreation Association operated a privately-owned community swimming pool. The association's bylaws provided that membership was open to residents within a three-quarter mile radius of the pool and to others who were recommended by a member. Even though persons living outside a three-quarter mile radius could become members, persons living within the area received several preferences. An area resident required no recommendation, received an advantageous position on the waiting list if the membership was full, and had the right to confer a first option on his membership upon the purchaser of his property.
 
 
 23
 The association denied membership to a black resident of the designated area, and he brought suit under § 1982. The district court considered the membership preferences outside the scope of § 1982 "property" because the preferences were not absolute membership rights which could be transferred incident to the acquisition of property. The Supreme Court ruled otherwise.
 
 
 24
 The Court observed that the preference given area residents may have affected the price of homes and that by denying the plaintiff membership the association had diluted the plaintiff's right to purchase a home in the area. 410 U.S. at 437, 93 S.Ct. at 1094. The Court then articulated the rationale for its decision:
 
 
 25
 When an organization links membership benefits to residency in a narrow geographical area, that decision infuses those benefits into the bundle of rights for which an individual pays when buying or leasing within an area. The mandate of 42 U.S.C. § 1982 then operates to guarantee a nonwhite resident, who purchases, leases, or holds this property, the same rights as are enjoyed by a white resident.
 
 
 26
 The district court attempted to differentiate the instant case from Sullivan and Tillman by emphasizing that the Salisbury Club has not formally connected membership benefits to residency in the Salisbury subdivision. As the district judge found, subdivision residents are given no written preferences for club membership nor any written guarantees of acceptance into the club, either in the club bylaws or in their deeds to subdivision property. Originally, the deed from the development corporation to the club contained a preference for subdivision residents, but that preference has since been removed.
 
 
 27
 Nevertheless, like Little Hunting Park in Sullivan and the Wheaton-Haven Recreation Association in Tillman, the Salisbury Club has linked membership to residency in a narrow geographic area. In practice, the Salisbury Club has opened its membership to all white residents of the Salisbury subdivision. No resident of the Salisbury subdivision, except for two black families, has ever been denied membership in the Salisbury Club.
 
 
 28
 Furthermore, the club has done a great deal to convince subdivision residents that they may become members. As recounted above, the club published a notice in a subdivision newsletter inviting "All Salisbury Residents" to join the club, has aided real estate salesmen in familiarizing new residents with the benefits of club membership, and has not hindered the subdivision real estate agent from advertising club membership as an advantage of living in Salisbury. Indeed, the club's membership policy and its recruitment activities are consistent with the subdivision developer's original concept that the club would provide recreational facilities for subdivision residents. There is thus no doubt that membership in the Salisbury Club is open to all residents of the Salisbury subdivision, except of course blacks.
 
 
 29
 Functionally, then, the connection between club membership and residency in the subdivision is as strong as the connection contained in the Sullivan park bylaw which permitted a park member to assign his membership to a tenant. Moreover, in reality, the link between club membership and residency in the Salisbury subdivision is closer than the link created through the preference granted nearby residents by the association in Tillman. In Tillman, residents received only preferences; in this case, subdivision residents have in fact been assured membership.[13] Even though the guarantee is not contained in a formal document, as were the preferences in Tillman, the guarantee is nonetheless real. As in Tillman, the district court found in this case that the prices of homes in the Salisbury subdivision include a premium because of the availability of club membership to subdivision residents.
 
 
 30
 In short, we do not find the lack of formal written promise of membership critical for the purposes of § 1982. As in Tillman, we find that the club "links membership benefits to residency in a narrow geographic area" and that thereby the club "infuses those benefits into the bundle of rights for which an individual pays when buying or leasing within" the subdivision. And, like the Court in Sullivan, we underscore that a restrictive construction of § 1982 would be contrary to the statute's "broad and sweeping" intent. In light of Tillman and Sullivan, then, we conclude: When an organization links membership with residency in a narrow geographic area, in a formal writing or in practice, the organization violates § 1982 if it denies residents of that area membership based on race.[14]
 
 
 31
 Consequently, we reverse the decision of the district court. Through its membership practices and advertising, the Salisbury Club has inserted club membership into the bundle of rights a purchaser receives when he buys a home in the Salisbury subdivision. When the club refused the plaintiffs membership, it deprived them of part of the value of their home, solely because they are black. Thereby, the club interfered with the plaintiffs' right to purchase and hold "property." This action was in violation of § 1982.
 
 IV.
 
 32
 The decision of the district court is reversed, and the case is remanded to the district court for a determination of appropriate relief.
 
 
 33
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable William M. Kidd, United States District Judge for the Southern District of West Virginia, sitting by designation
 
 
 [1]
 The plaintiffs are husband and wife
 
 
 [2]
 The directors of the Salisbury Club were also included as parties defendant. Defendants collectively are referred to herein as the "club" or the "Salisbury Club."
 
 
 [3]
 The developer of the subdivision is the Salisbury Corporation. The two principal owners of the developer are J. Kenneth Timmons and C. Porter Vaughan
 
 
 [4]
 The phrase "truly private" is derived from the Supreme Court's opinion in Tillman v. Wheaton-Haven Recreation Ass'n, 410 U.S. 431, 438-39, 93 S.Ct. 1090, 1094, 35 L.Ed.2d 403 (1973)
 
 
 [5]
 The district court determined that the private club exemption of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(e), implicitly amended § 1981. The district court rested its conclusion in part on Tillman v. Wheaton-Haven Recreation Ass'n, 451 F.2d 1211 (4 Cir. 1971), rev'd, 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973). Because we do not reach this issue, we do not pass upon the continued validity of this aspect of our decision in Tillman
 
 
 [6]
 The district court may have decided that the constitution bars the application of §§ 1981 and 1982 to privately-owned country clubs which are not truly private. The court stated: "The government has no business telling anyone who (sic) he must invite into his home; nor has the government the right to tell Salisbury, a private country club, who (sic) it must admit to membership."
 If the district court attempted to construct a constitutional privacy defense to §§ 1981 and 1982 which reaches farther than the proffered "truly private" defense discussed infra, we reject that portion of the district court's opinion. No proposed constitutional right of privacy could protect clubs which are not truly private from the compelling policies underlying §§ 1981 and 1982. Indeed, that is the lesson of Sullivan, Tillman, and Runyon, discussed infra, which subjected privately-owned clubs and schools to liability under §§ 1981 and 1982.
 
 
 [7]
 The district court also cited other factors as demonstrating that the Salisbury Club was truly private. The district court noted that the club provided more recreational activities than the association in Tillman and that membership in the Salisbury Club was more costly. We consider these facts immaterial to the § 1981 determination
 
 
 [8]
 The deed also provided that the design of the club's buildings, its landscaping, driveways, lights, and signs would be subject to the approval of the Architectural Control Committee of the Salisbury Corporation
 
 
 [9]
 The intimate relationship between the club and the developer is further evidenced by the fact that they share the same trade symbol
 
 
 [10]
 The subdivision real estate agent is C. Porter Vaughan, Inc. C. Porter Vaughan is the other principal owner of the Salisbury Corporation which developed the subdivision and set up the club
 
 
 [11]
 The district court also ruled that the plaintiffs' § 1982 claim was defeated by the club's "truly private" defense. We have decided that the club is not truly private; hence we do not reach the issue of whether § 1982 is subject to a private club defense
 
 
 [12]
 We analyze the § 1982 claim in terms of the connection between club membership and ownership of subdivision property because the district court addressed the claim in this fashion, because the parties have debated the § 1982 claim in these terms, and because this analytical approach is the narrowest basis for decision
 However, it is not at all clear that club membership must be connected to ownership of other property to fall within the terms of § 1982. Section 1982 includes real and personal property. In light of the broad meaning of the statutory language, club membership may in itself be real or personal property. See Sullivan, 396 U.S. at 236-37, 90 S.Ct. at 404; Sims v. Order of United Commercial Travelers of America, 343 F.Supp. 112, 114-15 (D.Mass.1972) (holding that life insurance policy was property under § 1982); Note, Federal Power to Regulate Private Discrimination: The Revival of the Enforcement Clauses of the Reconstruction Era Amendments, 74 Colum.L.Rev. 449, 468-69 (1974); The Supreme Court, 1969 Term, 84 Harv.L.Rev. 1, 85 & n.17 (1970). If the definition of § 1982 property reaches this far, then § 1982 and § 1981 would overlap in their application to club memberships. See Olzman v. Lake Hills Swim Club, Inc., 495 F.2d 1333, 1337-40 (2 Cir. 1974); Sims v. Order of United Commercial Travelers of America, 343 F.Supp. at 114-15.
 
 
 [13]
 It is true that property owners in the subdivision do not convey a legal right to club membership when they sell their subdivision property. But, as a practical matter, purchasers of subdivision property have been granted club membership as a matter of course
 
 
 [14]
 If we permitted the absence of a formal written guarantee or preference to be determinative, we would substantially dilute the protection that § 1982 affords in this area. If clubs connected to a designated geographic area could avoid the strictures of § 1982 by deleting guarantees and preferences from their bylaws while in fact still preferring residents of a particular area, Tillman and Sullivan would have little meaning