Jit Kim LIM, M.D., Plaintiff–Appellant,

v.

CENTRAL DuPAGE HOSPITAL, et al., Defendants–Appellees.

No. 88–1267.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1988.

Decided March 24, 1989.

Rehearing Denied May 30, 1989.

---

Michael L. Bolos, Michael L. Bolos, Ltd. Chicago, Ill., for plaintiff-appellant.

David C. Hall, Lord Bissell & Brook, Chicago, Ill., for defendants-appellees.

Before POSNER, RIPPLE, and KANNE, Circuit Judges.

POSNER, Circuit Judge.

Dr. Jit Kim Lim is an Asian–American neurosurgeon whose staff privileges at Central DuPage Hospital, a private hospital in Illinois, were revoked. Claiming that the revocation was due (in part) to his race and therefore violated his rights under 42 U.S.C. §§ 1981, 1982, and 1985(3), Lim brought suit against the hospital and members of its medical staff. His principal—now, perhaps, his only—claim was that the defendants had deprived him of property in violation of these statutes. The defendants moved to dismiss the complaint on the ground that hospital staff privileges are not "property" within the meaning of the civil rights statutes. The district judge agreed, and dismissed the action. Focusing as the parties had on section 1981, which in relevant part provides that all persons "shall have the same right ... to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," the judge said: "Section 1981, of course, protects more than just property interests; among other things, it protects the right of a person to make and enforce contracts. Lim has framed the allegations of his Second Amended Complaint and his briefs in terms of property rights, and the Court has addressed those allegations accordingly. Lim, however, has not made out *any* claim under § 1981, be it based on property rights or otherwise." (Emphasis in original.)

Most civil rights suits are brought under section 1983, which gives a tort remedy to people deprived of federal rights under color of state law, rather than under sections 1981, 1982, or 1985; and most allege a deprivation of liberty or property without due process of law, in violation of the Fourteenth Amendment. Litigation under section 1983 has given rise to a rich body of doctrine on the meaning of "property" in the due process clause. See, e.g., *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Patterson v. Portch*, 853 F.2d 1399, 1404–05 (7th Cir. 1988). But section 1983 is not available to Dr. Lim. Central DuPage Hospital is a private hospital and the other defendants are private physicians. The defendants' actions are not state action, colorable or otherwise. See, e.g., *Spencer v. Lee*, 864 F.2d 1376 (7th Cir.1989) (en banc); *Mendez v. Belton*, 739 F.2d 15, 18 (1st Cir.1984). Lim's complaint alleges racial discrimination, however, and sections 1981 and 1982 expressly protect a person's right to have and enjoy property regardless of his race. Section 1982 is the more emphatic provision on the score of property rights, guaranteeing all citizens the "same right ... as is enjoyed by white citizens ... to inherit, purchase, lease, sell, hold, and convey real and personal property." But section 1981 also protects property, as the passage quoted earlier makes clear. And, in sharp contrast to section 1983, both 1981 and 1982 have been held applicable to private as well as public discrimination. *Jones v. Mayer*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) (section 1982); *Runyon v. McCrary*, 427 U.S. 160, 168–72, 96 S.Ct. 2586, 2593–95, 49 L.Ed.2d 415 (1976) (section 1981).

The Supreme Court has heard argument on whether to overrule *Runyon* and by implication *Jones*. See *Patterson v. McLean Credit Union*, 485 U.S. 617, 108 S.Ct. 1419, 99 L.Ed.2d 879 (1988) (ordering reargument); cf. *Runyon v. McCrary, supra*, 427 U.S. at 187, 96 S.Ct. at 2602 (concurring opinion). But, for now at least, *Jones* and *Runyon* bind us.

The third civil rights statute invoked by Lim, section 1985(3), creates a tort remedy for (so far as pertinent here) injuries to property caused by private conspiracies to infringe certain federal rights. Lim does not discuss section 1985(3) in his appeal brief and may have abandoned his claim under that statute. Abandonment of claims is a *leitmotif* of this appeal.

The parties have cited only section 1983 cases for the meaning of "property"—in fact only cases construing "property" in the due process clause. (The principal significance of section 1983, so far as the protection of property rights is concerned, is as a vehicle for enforcing that clause.) Our own research has unearthed only a few cases on the meaning of "property" in the other civil rights statutes, and the discussion of the issue in these cases is for the most part cursory. See *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 435–36, 93 S.Ct. 1090, 1093, 35 L.Ed.2d 403 (1973); *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 236–37, 90 S.Ct. 400, 404–05, 24 L.Ed.2d 386 (1969); *Wright v. Salisbury Club, Ltd.*, 632 F.2d 309, 314–16 (2d Cir.1980); *Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333, 1339–40 (2d Cir.1974); *Walker v. Pointer*, 304 F.Supp. 56, 61–62 (N.D.Tex.1969); *Terry v. Elmwood Cemetery*, 307 F.Supp. 369 (N.D.Ala.1969); *Sims v. Order of United Commercial Travellers*, 343 F.Supp. 112 (D.Mass.1972). The reason for the dearth of authority seems plain. The main controversy over the meaning of "property" in the due process clause concerns the extent to which contractual rights, such as the rights created by an employment contract, shall be deemed a form of property protected by the clause. Since section 1982 explicitly protects the right to enforce contract rights (and, as currently interpreted, against private as well as public action, remember), there is little pressure for an expansive interpretation of property in this or related sections—which is not to deny that it *has* been expansively interpreted in these sections. See, e.g., *Tillman v. Wheaton-Haven Recreation Ass'n, Inc., supra*. At all events, the parties have agreed that "property" means the same in the three statutes Lim invokes as in section 1983, and we need not go behind this stipulation. Therefore the only question is whether the complaint alleges a deprivation of property as that word has been understood in cases interpreting the due process clause of the Fifth and Fourteenth Amendments.

■ "Property" in that context is an *entitlement*, by which we mean a valuable right that cannot be withdrawn unless a specified substantive condition comes to pass, such as a failure to pay taxes on real property or the commission of an act that constitutes cause for dismissal from employment under a tenure contract or for expulsion from a public school. See, e.g., *Goss v. Lopez*, 419 U.S. 565, 573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975); *Fleury v. Clayton*, 847 F.2d 1229 (7th Cir.1988); *Patterson v. Portch, supra*, 853 F.2d at 1405. Both initial and renewal appointments to the medical staff of Central DuPage Hospital are for one year running from July 1 through June 30. If Lim's staff privileges had been terminated in the middle of his first year or of any annual reappointment, he could argue, with support from the Fifth Circuit decisions cited in *Illinois Psychological Ass'n v. Falk*, 818 F.2d 1337, 1344 (7th Cir.1987), that he had been deprived of a property right. The argument might well fail. We expressed skepticism in *Falk* that the termination of hospital staff privileges is a deprivation of property, pointing out that, if it were, this would make every contract right a property right. But no more than in *Falk* need we resolve the question in this case. Lim was not terminated during term; he is complaining about the hospital's failure to reappoint him when his current term expired.

█ The failure to reappoint Lim could deprive him of property only if he had an entitlement to reappointment. Whether he did depends on the criteria for reappointment set forth in the hospital's by-laws. Those criteria are general and vague: "professional competence and clinical judgment in the treatment of patients, his ethics and conduct, his attendance at Medical Staff meetings, health status and participation in staff affairs, his compliance with the Hospital Bylaws and the Medical Staff Bylaws and Rules and Regulations, his cooperation with Hospital personnel, his use of the Hospital's facilities for his patients, his relations with other practitioners, and his general attitude toward patients, the Hospital and the public." No one reading this laundry list could suppose that a member of the hospital's medical staff had an entitlement to reappointment; the effect is to give the hospital virtually unlimited discretion regarding reappointment of staff members.

Lim was first appointed to Central DuPage Hospital's medical staff in 1976 and was reappointed in subsequent years. On December 17, 1985, concerned with what appeared to be disproportionate post-operative complications among Lim's patients, the medical staff began an investigation of his competence. This investigation, which included a hearing at which Lim appeared, resulted in March 1986 in a decision by the staff—affirmed by the hospital's board of directors on August 25, 1986, following a second hearing—not to reappoint Dr. Lim for the following year (i.e., the year beginning July 1, 1986). And he was not reappointed. So even if the hospital could not have rescinded Lim's appointment during the year ending on June 30, 1986—even if, in other words, he had an entitlement to serve out the year, much like an employee under a one-year employment contract— there was no deprivation of such an entitlement because he was not terminated until after June 30. All he can claim to have lost is an entitlement he never had to be reappointed year after year.

█ True, Lim's *contract* rights may have been violated. The bylaws set forth the terms of the contractual relationship between the physician and the hospital, and they create elaborate procedures for determining whether a member of the staff will be reappointed. Lim says the hospital didn't follow these procedures, and he may be right (the district judge made no finding on the question). If so, and if he could prove that the hospital's reason for not following those procedures was that he is not Caucasian (rather than, as he also and rather inconsistently alleges, because he had a referral relationship with a chiropractor), he would have demonstrated a violation of section 1981. One can of course contract for procedural safeguards; and a racially motivated deprivation of contract rights is securely within the scope of section 1981 as interpreted by *Runyon*. Section 1981 protects the right of nonwhites "to make *and enforce* contracts" (emphasis added)—that is, secures to them contract rights as well as the right to make contracts—and *Runyon* holds that the rights created by section 1981 can be infringed by a private party as well as by the state.

Unfortunately for Dr. Lim, he waived, both in the district court and in this court, the contention (first made in the oral argument of the appeal by his counsel in response to questions from the bench) that the defendants deprived him of his contractual rights. It is true that his complaint is so broadly worded that it cannot be said to exclude the contention. It is true that it mentions section 1981, which in turn mentions contract rights. But section 1981 also mentions property, the complaint stresses property rights, and the defendants (whether rightly or wrongly) read the complaint as limited to property rights— and moved to dismiss it on that ground. At this point Lim, in order to preserve his claim that he had been deprived of his contract rights, should in his response to the motion to dismiss have stated that whether or not he had been deprived of a property right, he certainly had been deprived of a contract right. This he did not do. Instead he responded that he *had too* been deprived of property rights. This form of response created the impression that he agreed with the defendants' interpretation of the scope of the complaint.

**648**

So, naturally, the district court also read the complaint as limited to a deprivation of property rights (the "or otherwise" concluding the passage quoted earlier from the district court's opinion was a throwaway) and analyzed the case accordingly.

Until oral argument in this court—which was too late for advancing new (or what is the same thing, reviving abandoned) grounds for reversal—Lim acquiesced in the district court's interpretation of his case. His opening and reply briefs in this court argue only that he was deprived of property rights. The sole reference to contract is as a source of property rights. Property rights normally do arise out of contract, but not every contract creates a property right. *Illinois Psychological Ass'n v. Falk, supra,* 818 F.2d at 1344; *Brown v. Brienen,* 722 F.2d 360, 363–65 (7th Cir.1983). In particular, a contract right merely to specified procedures—the only right that Lim possessed as an applicant for reappointment to the medical staff after his current one-year appointment was up—is not a property right in the constitutional sense. See *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988) (en banc), and cases cited there; also cases cited in *Shango v. Jurich,* 681 F.2d 1091, 1100 (7th Cir.1982). True, many of the cases cited in these two opinions, like *Shango* itself, involve liberty rather than property; but some are property cases, as was *Archie,* and the principles are the same in both types of case. And true, none of these is a contract case; all are cases where a state statute, ordinance, or administrative regulation had created a procedural right. But we cannot see what difference it makes whether the procedural right is created by a statute, ordinance, regulation, or other public enactment; by a contract between a public agency and the plaintiff; or, as here, by a private contract. Contracts can create property rights, but a contract that creates merely a right to procedure does not create a property right within the meaning of the due process clause.

Having staked his all on showing that he was deprived of property in that sense, Lim cannot be allowed to reverse field at oral argument and in agile response to our questions revive an abandoned ground for reversal. See, e.g., *Heil v. Morrison Knudsen Corp.,* 863 F.2d 546, 548–49 (7th Cir.1988) *United States v. Hornick,* 815 F.2d 1156, 1159 (7th Cir.1987); *Bonds v. Coca-Cola Co.,* 806 F.2d 1324, 1328 (7th Cir.1986). The contract ground was waived by being abandoned and the property ground was properly rejected. The dismissal of the suit is therefore

AFFIRMED.

RIPPLE, Circuit Judge, dissenting.

I would reverse the judgment of the district court and remand the case for further proceedings. In my view, the complaint adequately alleges racially based interference with the contract rights of the appellant. I do not believe that we can say that the claim was waived in the district court. Nor do I read the appellant's brief as waiving the question in this court. Therefore, under the law as it now stands, the appellant has a right to progress beyond the initial pleadings and, in my view, it was error for the district court to cut off the litigation so summarily.