858 F.Supp. 954 (1994)
David A. SHAW, M.D., Plaintiff,
v.
PHELPS COUNTY REGIONAL MEDICAL CENTER, Defendant.
No. 4:93CV02696 GFG.
United States District Court, E.D. Missouri, Eastern Division.
July 18, 1994.
*955 David M. Harris, Greensfelder and Hemker, St. Louis, MO, for plaintiff.
*956 Peter H. Ruger, Peper and Martin, St. Louis, MO, Ronald R. McMillin, Carson and Coil, Jefferson City, MO, for defendant.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on plaintiff's motion to strike and defendant's motion to dismiss.
Plaintiff, an anesthesiologist currently practicing at the Phelps County Regional Medical Center (Medical Center), brings this action pursuant to 42 U.S.C. § 1983 and 15 U.S.C. § 2 (Sherman Act) alleging that Medical Center violated his right to due process under the Fourteenth Amendment and violated the Sherman Act's prohibition against monopolization. Plaintiff also alleges several violations of Missouri state law. Specifically, plaintiff claims that defendant terminated his medical staff privileges in violation of its own Bylaws and that his termination was designed to eliminate competition with defendant's anesthesia services. Plaintiff seeks a temporary restraining order (TRO) and preliminary injunction allowing him to maintain staff privileges at the Medical Center.
Defendant moves to dismiss plaintiff's complaint and motions for TRO and preliminary injunction arguing that it has not deprived plaintiff of any constitutionally protected right. Defendant argues further that it is immune from plaintiff's antitrust claims under the doctrine of state action. Finally, defendant argues that because plaintiff fails to state a federal claim, the Court should dismiss plaintiff's pendent state law claims for lack of subject matter jurisdiction.
On January 7, 1994, defendant filed with the Court the affidavit of Daniel R. Smigelski, the Chief Executive Officer of the Medical Center. On January 18, 1994, defendant filed its motion to dismiss. Plaintiff moves to strike portions of the affidavit and argues that the motion to dismiss is really a motion for summary judgment because it incorporates facts set forth in the affidavit.
Because defendant incorporates the affidavit of Daniel Smigelski, the Court will construe defendant's motion as one for summary judgment. See Fed.R.Civ.P. 12(b). Plaintiff seeks to strike certain portions of the affidavit arguing that Mr. Smigelski's assertions are not based on personal knowledge and that certain statements constitute inadmissible hearsay. Plaintiff does not dispute the factual assertions of the affidavit but opposes Mr. Smigelski's interpretations of various actions of the Medical Center board.
It is clear that Mr. Smigelski's affidavit is based on the minutes of the Medical Center board meetings, some of which plaintiff has attached to his own pleadings, as well as other hospital documents which would themselves be admissible at trial. Certain statements that plaintiff seeks to strike, i.e. paragraphs 15 and 18 (second), involve Mr. Smigelski, and the Court must assume that they are based on his personal knowledge. The Court will not strike any portion of the affidavit but will rely only on the dates and specific facts set forth in the affidavit which plaintiff does not dispute. The Court will not rely on any interpretive statements made by Mr. Smigelski. The Court notes, however, that few of those portions of the affidavit at issue in plaintiff's motion are germane to the legal issues presented in defendant's motion for summary judgment.
Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c). Once the moving *957 party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
Medical Center is a county hospital organized and existing pursuant to Mo.Rev.Stat. § 205.160 et seq. The hospital is governed by an elected Board of Trustees (Board) empowered to "... make and adopt such bylaws, rules and regulations for its own guidance and for the government of the hospital as may be deemed expedient for the economic and equitable conduct thereof...." Mo.Rev.Stat. § 205.190.
Plaintiff is a licensed anesthesiologist who applied for and received medical staff privileges at Medical Center in 1988. Plaintiff billed patients directly for his fees relating to anesthesiology services rendered at Medical Center. Plaintiff was neither an employee nor an independent contractor of the Medical Center.
On May 13, 1992, the Board adopted a resolution that would bring all anesthesiology services in-house. Any anesthesiologists rendering services at Medical Center would be required to be employed by, or under contract with, Medical Center. Any anesthesiologists not employed by, or under contract with, Medical Center would not be allowed to provide services at Medical Center. Subsequent to the Board's adoption of the resolution, Medical Center and plaintiff discussed and attempted to negotiate a contract under which plaintiff would retain his staff privileges and continue to render services at Medical Center.
On October 21, 1993, the Board voted to close the anesthesiology department effective December 31, 1993 and implement the policy as set forth in the previously adopted resolution. Plaintiff and Medical Center again attempted to reach an agreement but were unsuccessful. A Board hearing on the situation regarding plaintiff was scheduled for December 30, 1993, but plaintiff filed this action for injunctive relief from the new Medical Center policy on December 29, 1993, and the hearing was cancelled. Plaintiff continues to render services at Medical Center in an independent capacity. This Court heard arguments on January 11, 1993, and the Court requested that plaintiff be allowed to continue his practice at Medical Center pending the Court's ruling in this action.
Defendant seeks an order granting summary judgment in its favor on plaintiff's federal due process and antitrust claims. Specifically, with respect to plaintiff's due process claims brought pursuant to 42 U.S.C. § 1983, defendant argues that plaintiff cannot establish that he was deprived of a constitutionally protected interest; that plaintiff was not entitled to a due process hearing because the decision not to renew his staff privileges was unrelated to his professional capabilities or conduct; and that state post-deprivation remedies provide adequate protection for any alleged violations plaintiff may have suffered.
In order to succeed on his due process claim, plaintiff must establish that he has been deprived of a constitutionally protected property or liberty interest. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972); Todorov v. DCH Healthcare Authority, 921 F.2d 1438 (11th Cir. 1991). In order to establish a property interest,
a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it....
Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state lawsrules or understandings that secure certain benefits and that support *958 claims of entitlement to those benefits.
Roth, supra 408 U.S. at 577, 92 S.Ct. at 2709; see also Skeets v. Johnson, 816 F.2d 1213 (8th Cir.1987). The Court finds that plaintiff has not been deprived of such a protected property interest.
Plaintiff has not alleged that Missouri law grants him a property right in continuing or renewed staff privileges. Claims of entitlement, under the due process clause, must be supported by some state statute, legal rule, or a mutually explicit understanding. Todorov, supra at 1463 (citing Perry v. Sindermann, 408 U.S. 593, 601-02, 92 S.Ct. 2694, 2699-2700, 33 L.Ed.2d 570 (1972)). "[M]utually explicit understandings may be proved through either the existence of an implied contract or through the existence of `industrial common law'". Shahawy v. Harrison, 778 F.2d 636, 642 (11th Cir.1985).
In the present case, there was no breach of an implied contract. Plaintiff was aware of Medical Center's change to a closed system over one and a half years prior to its implementation and prior to the time at which his privileges were up for renewal. Plaintiff negotiated with Medical Center but found Medical Center's offer to be inadequate. Furthermore, Medical Center notes the closed contract practice at other hospitals in Missouri, including the largest in St. Louis, similar to that implemented at Medical Center. Plaintiff cites no Missouri statute insuring the renewal of his staff privileges or any mutually explicit understanding between the parties that would entitle him to the privileges which Medical Center seeks to deny him. There is no evidence of an implied agreement or a common practice relating to those privileges. See Perry v. Sindermann, supra. Accordingly, the Court finds that no mutually explicit understanding existed between the parties which would give rise to a protected property interest.
Plaintiff contends that Medical Center's Bylaws create an entitlement to due process. Specifically, plaintiff asserts that he was not afforded the procedural due process prior to the termination of his privileges as required by Medical Center's Bylaws. Plaintiff does not cite any authority which establishes that a pretermination process created by a public employer amounts to a protected property interest. In at least one case, the United States Court of Appeals has refused to express its view on the matter. See Skeets v. Johnson, supra at 1215 n. 3. This Court is not inclined to recognize a property interest based on Medical Center's pretermination procedures. Nevertheless, the Court notes that a hearing was scheduled regarding plaintiff's situation for December 31, 1993 but that the filing of this action on December 29, 1993 resulted in the cancellation of the hearing.
There is some split in the Circuits as to whether a physician has a constitutionally protected property interest where his privileges are terminated as the result of a managerial decision to convert to a closed, exclusive contract system and where the decision is not based on the conduct or qualifications of the physician. See e.g., Lim v. Central DuPage Hosp., 871 F.2d 644 (7th Cir.1989) (physician whose privileges were not renewed at time his previous term of privileges expired did not deprive physician of protected property right); Shahawy v. Harrison, 875 F.2d 1529 (11th Cir.1989) (Shahawy II) (physician's staff privileges recognized to be protected property interest).
Plaintiff cites Navato v. Sletten, 560 F.2d 340 (8th Cir.1977), as authority for the proposition that the Eighth Circuit has recognized a property right in a physician's staff privileges. However, Navato is distinguishable from the present case, because the plaintiff in that case was terminated in the midst of a five-year employment contract and after a supervising physician raised concerns about the plaintiff's competency. In the present case, there is no dispute that plaintiff's competency is not at issue. Medical Center has sought to retain plaintiff's services but plaintiff is not amenable to the remuneration offered for his exclusive services. Similarly, in Shahawy II, supra, the Court noted that in a previous action brought by the same plaintiff, the Court held that the plaintiff had no constitutionally protected property interest in the medical privileges denied him. See Shahawy v. Harrison, 778 F.2d 636 (11th Cir. *959 1985) (Shahawy I). In Shahawy II, the Court found a protected property interest in the physician's privileges when his full staff privileges were terminated during the pending of the appeal in Shahawy I.
In Lim, supra, the Court noted the fact that the plaintiff's privileges were terminated at the end of a term of those privileges, just as in the instant case, and not in the middle of a contract term. The Court stated that to recognize every denial of staff privileges as deprivation of a protected property right "would make every contract right a property right." See Lim, supra at 646. In the present case, the termination of plaintiff's privileges at the end of his term is the result of his refusal to sign a contract with Medical Center under a managerial policy reached by the Board that was not directed at ending his privileges.
Medical Center's Bylaws provide that the Board "shall exercise all the powers granted to them to insure the safe and efficient operating of the Medical Center." (Medical Center Bylaws, para. 3.1). The Court finds that the decision to create an in-house, closed contract system for rendering anesthesiology services is fully within the power of the Board. The Court finds that such a decision does not deprive the plaintiff of a protected property right sufficient to invoke the protections of the due process clause. Accordingly, the Court need not consider whether plaintiff was accorded sufficient due process prior to the termination of his staff privileges, and his claim brought pursuant to § 1983 will be dismissed.
Next, the Court will consider whether plaintiff's antitrust claims are barred by the doctrine of state action. In Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the Supreme Court held that "the federal antitrust laws do not prohibit a State `as sovereign' from imposing certain anticompetitive restraints `as an act of government'." Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 391, 98 S.Ct. 1123, 1125, 55 L.Ed.2d 364 (1978). For a state, or any of its subdivided bodies of government, i.e. cities, counties, etc., to be immune under the doctrine, a Court must find that the challenged activity was authorized by the state legislature and that the legislature intended to displace competition. See Scott v. City of Sioux City, Iowa, 736 F.2d 1207 (8th Cir.1984), cert. denied, 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985); Gold Cross Ambulance & Transfer v. City of Kansas City, 705 F.2d 1005 (8th Cir.1983), cert. denied, 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985). With respect to the second requirement, the Eighth Circuit has held that "the state policy to displace competition can be inferred `if the challenged restraint is a necessary and reasonable consequence of engaging in the authorized activity'." Scott, supra at 1211.
In the present case, authority to operate Medical Center is granted by Mo.Rev.Stat. § 205.160 et seq. Plaintiff does not contest that the hospital functions under this statute but does challenge as "challenged activity" the termination of his staff privileges for economic reasons. The Court finds that § 205.160 authorizes the operation of a hospital. Plaintiff's "challenged activity" will be considered under the second prong of the Eighth Circuit's test: whether the legislature intended or allowed the Board to displace competition by adopting a closed-contract system which resulted in the termination of plaintiff's staff privileges.
In Hallie v. City of Eau Claire, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), the Supreme Court recognized that "no legislature can be expected to catalog all of the anticipated effects of [an enabling statute]." Accordingly, the Court held that such a statute need not expressly mention anticompetitive conduct in order for such conduct to be authorized. Id. Missouri Revised Statutes § 205.190.3 authorizes Medical Center's Trustees to "... make and adopt such bylaws, rules and regulations for its own guidance and for the government of the hospital as may be deemed expedient for the economic and equitable conduct thereof ...". Sections 205.195, 205.200 and 205.300 grant the Board authority over staffing decisions and physicians. Physicians are to "give ... [their] willingness to accept the board as the supreme governing authority of the hospital". Mo.Rev.Stat. § 205.195.
*960 The Court finds that in giving explicit authority to the Board and to the Trustees of Medical Center to make staffing decisions and policy, the legislature contemplated, if not authorized, decisions to be made by Medical Center which may result in the termination of physicians, reductions in staff, and the formation or closure of various departments within Medical Center. The Court finds further that the legislature must have contemplated that in reaching staff decisions based on administerial concerns, Medical Center would reasonably engage in the termination of privileges of certain physicians.
The Court finds that the legislature expressly authorized Medical Center to operate as a hospital and that termination of a physician's privileges is a necessary and reasonable result of that authorized activity. The Court finds, therefore, that the legislature intended to displace competition and that Medical Center is immune from plaintiff's antitrust claims. Accordingly, plaintiff's antitrust claims against Medical Center will be dismissed.
Finally, having dismissed plaintiff's federal claims, the Court will dismiss plaintiff's remaining state law claims for lack of jurisdiction.

ORDER
In accordance with the memorandum filed herewith this date,
IT IS HEREBY ORDERED that plaintiff's motion to strike is denied.
IT IS FURTHER ORDERED that defendant's motion to dismiss, construed as a motion for summary judgment, Counts IV, VII and VIII, is granted as to those Counts.
IT IS FURTHER ORDERED that plaintiff's remaining state law claims are dismissed.