485 U.S. 617 (1988)
PATTERSON
v.
McLEAN CREDIT UNION
No. 87-107.
Supreme Court of United States.
Order entered April 25, 1988
ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
PER CURIAM.
This case is restored to the calendar for reargument. The parties are requested to brief and argue the following question:
"Whether or not the interpretation of 42 U. S. C. § 1981 adopted by this Court in Runyon v. McCrary, 427 U. S. 160 (1976), should be reconsidered?"
One might think from the dissents of our colleagues from the above order that our decision to hear argument as to whether the decision in Runyon v. McCrary, 427 U. S. 160 (1976), should be reconsidered is a "first" in the history of the Court. One would also think from the language of the dissents that we have decided today to overrule Runyon v. McCrary. We have of course done no such thing, but have decided, in light of the difficulties posed by petitioner's argument for a fundamental extension of liability under 42 U. S. C. § 1981, to consider whether Runyon should be overruled. It is surely no affront to settled jurisprudence to request argument on whether a particular precedent should be modified or overruled.
Three Terms ago, for example, we requested the parties to reargue the validity of our decision in National League of Cities v. Usery, 426 U. S. 833 (1976). Garcia v. San Antonio *618 Metropolitan Transit Authority, 468 U. S. 1213 (1984) (ordering reargument), 469 U. S. 528 (1985) (decision). Two Terms before that we requested the parties to reargue and brief the question whether the Fourth Amendment exclusionary rule should apply where the evidence was obtained reasonably and in good faith. Illinois v. Gates, 459 U. S. 1028 (1982) (ordering reargument), 462 U. S. 213 (1983) (decision). In 1975, we ordered the parties in Alfred Dunhill of London, Inc. v. Republic of Cuba, 422 U. S. 1005 (1975) (ordering reargument), 425 U. S. 682 (1976) (decision), to address whether we should reconsider our holding in Banco Nacional de Cuba v. Sabbatino, 376 U. S. 398, 439 (1964), which had reaffirmed the Court's adherence to the "act of state" doctrine. And in Benton v. Maryland, 393 U. S. 994 (1968) (ordering reargument), 395 U. S. 784 (1969) (decision), the Court requested reargument on the question whether the "concurrent sentence doctrine" had continuing validity.
In addition, we have explicitly overruled statutory precedents in a host of cases. See, e. g., Monell v. New York City Dept. of Social Services, 436 U. S. 658 (1978), overruling Monroe v. Pape, 365 U. S. 167 (1961); Continental T. V., Inc. v. GTE Sylvania Inc., 433 U. S. 36 (1977), overruling United States v. Arnold, Schwinn & Co., 388 U. S. 365 (1967); Machinists v. Wisconsin Employment Relations Comm'n, 427 U. S. 132 (1976), overruling Auto Workers v. Wisconsin Employment Relations Bd., 336 U. S. 245 (1949); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U. S. 484 (1973), overruling Ahrens v. Clark, 335 U. S. 188 (1948); Andrews v. Louisville & Nashville R. Co., 406 U. S. 320 (1972), overruling Moore v. Illinois Central R. Co., 312 U. S. 630 (1941); Boys Markets, Inc. v. Retail Clerks, 398 U. S. 235 (1970), overruling Sinclair Refining Co. v. Atkinson, 370 U. S. 195 (1962); Peyton v. Rowe, 391 U. S. 54 (1968), overruling McNally v. Hill, 293 U. S. 131 (1934). These actions do not mean that the Court has been insensitive to considerations of stare decisis, but only that we recognize it as " `a principle of *619 policy and not a mechanical formula,' " Boys Markets, supra, at 241 (quoting Helvering v. Hallock, 309 U. S. 106, 119 (1940) (Frankfurter, J.)).
Both of the dissents intimate that the statutory question involved in Runyon v. McCrary should not be subject to the same principles of stare decisis as other decisions because it benefited civil rights plaintiffs by expanding liability under the statute. We do not believe that the Court may recognize any such exception to the abiding rule that it treat all litigants equally: that is, that the claim of any litigant for the application of a rule to its case should not be influenced by the Court's view of the worthiness of the litigant in terms of extralegal criteria. We think this is what Congress meant when it required each Justice or judge of the United States to swear to "administer justice without respect to persons, and do equal right to the poor and to the rich . . . ." 28 U. S. C. § 453.
JUSTICE BLACKMUN, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE STEVENS join, dissenting.
The Court today asks the parties to rebrief and reargue this case, focusing not on some neglected subtlety of the issues presented for review or on any overlooked jurisdictional detail, but on a question not presented: Whether the Court should reconsider its 7-2 opinion (WHITE and REHNQUIST, JJ., dissenting) in Runyon v. McCrary, 427 U. S. 160 (1976). The Court's determination now to reach out to reconsider that prior decision and everything that has been built upon it, is neither restrained, nor judicious, nor consistent with the accepted doctrine of stare decisis. See, e. g., Vasquez v. Hillery, 474 U. S. 254, 266 (1986) ("[T]he careful observer will discern that any detours from the straight path of stare decisis in our past have occurred for articulable reasons, and only when the Court has felt obliged `to bring its opinions into agreement with experience and with facts newly ascertained,' " quoting Burnet v. Coronado Oil & Gas Co., 285 U. S. 393, 412 (1932) (Brandeis, J., dissenting)).
*620 Twelve years ago, consistently with our prior decisions in Jones v. Alfred H. Mayer Co., 392 U. S. 409 (1968); Tillman v. Wheaton-Haven Recreation Assn., Inc., 410 U. S. 431 (1973); and Johnson v. Railway Express Agency, Inc., 421 U. S. 454 (1975), we observed that it is "well established" that 42 U. S. C. § 1981 "prohibits racial discrimination in the making and enforcement of private contracts." Runyon v. McCrary, 427 U. S., at 168. We reaffirmed our reading of the legislative history and language of the statute as reaching private acts of racial discrimination, and emphasized that in the years since Jones, Congress specifically had considered and rejected legislation to override our interpretation of the Civil Rights Act of 1866, 14 Stat. 27, on which § 1981 is based. 427 U. S., at 174, and n. 11. Writing for the Court, Justice Stewart noted:
"There could hardly be a clearer indication of congressional agreement with the view that § 1981 does reach private acts of racial discrimination. . . . In these circumstances there is no basis for deviating from the well-settled principles of stare decisis applicable to this Court's construction of federal statutes." Id., at 174-175 (emphasis in original).
See also id., at 186-187 (Powell, J., concurring); id., at 189-192 (STEVENS, J., concurring); Illinois Brick Co. v. Illinois, 431 U. S. 720, 736 (1977) ("[W]e must bear in mind that considerations of stare decisis weigh heavily in the area of statutory construction, where Congress is free to change this Court's interpretation of its legislation" (WHITE, J., writing for the Court)).
We continually have endorsed, in the employment and other contexts, Runyon's interpretation that § 1981 reaches private conduct. See, e. g., Goodman v. Lukens Steel Co., 482 U. S. 656 (1987); Saint Francis College v. Al-Khazraji, 481 U. S. 604 (1987); General Building Contractors Assn., Inc. v. Pennsylvania, 458 U. S. 375 (1982). See also Memphis *621 v. Greene, 451 U. S. 100 (1981). Over 100 lower court opinions cite the relevant portions of Runyon and its progeny. The parties in this case have not informed us of anything that suggests Congress has reconsidered its position on this statutory matter in light of Runyon and subsequent cases. I see no reason whatsoever for the Court deliberately to reach out in the manner it does today.
Although it is probably true that most racial discrimination in the employment context will continue to be redressable under other statutes, it may be that racial discrimination in certain other contexts is not actionable independently of § 1981. I am at a loss to understand the motivation of five Members of this Court to reconsider an interpretation of a civil rights statute that so clearly reflects our society's earnest commitment to ending racial discrimination, and in which Congress so evidently has acquiesced. I can find no justification for the bare majority's apparent eagerness to consider rewriting well-established law.
I dissent.
JUSTICE STEVENS, with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE BLACKMUN join, dissenting.
While I join JUSTICE BLACKMUN'S dissenting opinion, I write separately to emphasize those aspects of the Court's action today that I believe render the order particularly ill advised.
The Court's spontaneous decision to reexamine our holding in Runyon v. McCrary, 427 U. S. 160 (1976), is certain to engender widespread concern in those segments of our population that must rely on a federal rule of law as a protection against invidious private discrimination. Although the present case involves a claim of discrimination in the workplace, an area of the law where there is substantial overlap between 42 U. S. C. § 1981 and Title VII of the Civil Rights Act of 1964, 78 Stat. 253, 42 U. S. C. § 2000e et seq., a reexamination of the issue of statutory construction decided in Runyon implicates a much broader sphere of conduct. Runyon *622 itself did not involve a claim of employment discrimination, but the question "whether . . . 42 U. S. C. § 1981, prohibits private schools from excluding qualified children solely because they are Negroes." 427 U. S., at 163. The Court's order today will, by itself, have a deleterious effect on the faith reposed by racial minorities in the continuing stability of a rule of law that guarantees them the "same right" as "white citizens."[*] To recognize an equality right  a right that 12 years ago we thought "well established"  and then to declare unceremoniously that perhaps we were wrong and had better reconsider our prior judgment, is to replace what is ideally a sense of guaranteed right with the uneasiness of unsecured privilege. Time alone will tell whether the erosion in faith is unnecessarily precipitous, but in the meantime, some of the harm that will flow from today's order may never be completely undone.
In addition to the impact of today's decision on the faith of victims of racial discrimination in a stable construction of the civil rights laws, the order must also have a detrimental and enduring impact on the public's perception of the Court as an impartial adjudicator of cases and controversies brought to us for decision by lawyers representing adverse interests in contested litigation. The parties have asked us to decide whether § 1981 encompasses "a claim for racial discrimination in the terms and conditions of employment, including a claim that petitioner was harassed because of her race." Pet. for Cert. i. Neither the parties nor the Solicitor General have argued that Runyon should be reconsidered.
*623 As I have said before, "the adversary process functions most effectively when we rely on the initiative of lawyers, rather than the activism of judges, to fashion the questions for review." New Jersey v. T. L. O., 468 U. S. 1214, 1216 (1984) (dissenting from order directing reargument). If the Court decides to cast itself adrift from the constraints imposed by the adversary process and to fashion its own agenda, the consequences for the Nation  and for the future of this Court as an institution  will be even more serious than any temporary encouragement of previously rejected forms of racial discrimination. The Court has inflicted a serious  and unwise  wound upon itself today.
NOTES
[*] Section 1981 provides:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."