Josh GRAHAM and David
Hanson, Plaintiffs,

v.

Charles JONES, John Doe 1 through
10, and City of Portland,
Defendants.

Civ. No. 88–1445–FR.

United States District Court,
D. Oregon.

March 28, 1989.

Spencer M. Neal, Ginsburg, Gomez & Neal, Portland, Or., for plaintiffs.

Mark R. Moline, Deputy City Atty., Portland, Or., for defendants.

## OPINION

FRYE, Judge:

The matter before the court is the motion (# 5) of defendant City of Portland (City) against plaintiffs, Josh Graham and David Hanson:

1) to dismiss for failure to state a claim for relief Graham and Hanson's claims of violation of their first amendment rights to freely associate;

2) to dismiss for failure to state a claim for relief Graham and Hanson's claims of violation of 42 U.S.C. § 1981;

3) to dismiss for lack of subject matter jurisdiction Graham and Hanson's claims for declaratory judgment and an injunction; and

4) to dismiss for lack of subject matter jurisdiction over the person Graham and Hanson's claims against John Does 1 through 10.

Graham and Hanson allege that the City and unidentified police officers violated their rights under 42 U.S.C. § 1981 and under the First, Fourth and Fourteenth Amendments to the United States Constitution.

## ALLEGATIONS OF THE COMPLAINT

On September 14, 1988 at approximately 9:00 p.m., four black men, including Graham and Hanson and an Hispanic man, were in a vehicle travelling southbound on N.E. Union Avenue. They were stopped by police officers, ordered out of their car over a loudspeaker at gunpoint, and required to walk backwards toward the police officers. Approximately ten police officers arrived at the scene. The police officers then searched the occupants of the vehicle, including Graham and Hanson, forcing them to kneel with their faces to a concrete wall while the police officers interrogated them.

The police officers searched the vehicle without the consent of the driver or any of the passengers. The police officers examined photographs belonging to Graham and Hanson. They unlocked and searched the trunk of the vehicle without obtaining the consent of the driver or of any passenger.

The police officers accused Graham and Hanson of being gang members, stating that had they viewed someone in the car making a "gang handsign" in the rear window of the car before pulling them over. They photographed each of the five occupants and cited the driver for having a suspended driver's license and inadequate suspension on his vehicle. The police officers did not cite the other occupants of the vehicle for any crimes. They did not find contraband, weapons, or evidence of any crimes on the occupants or in the vehicle.

The police officers told Graham and Hanson that the search and the interrogation were a "routine gang investigation." The police officers detained Graham and Hanson at gunpoint for up to thirty minutes before releasing them.

The complaint further alleges that the policies of the Portland Police Department are designed to harass suspected gang members, and that this harassment targets young black males. Graham and Hanson allege that they are now afraid to associate together for fear of being subjected to further action by the police to harass them. They allege that their photographs are being circulated to other police officers, identifying them as gang members or as gang associates. They allege that being labelled as a gang member by the police subjects them to further unreasonable seizures and searches by police as well as the risk of attacks from actual gang members. Although the Chief of the Police Bureau has received a demand from Graham and Hanson to return the photographs, he has refused to do so.

Graham and Hanson seek preliminary and permanent injunctions (1) prohibiting defendants from harassing or unlawfully seizing or searching them based upon their alleged gang membership; and (2) requiring the defendants (a) to return all of the photographs taken of Graham and Hanson,

(b) to expunge any references from the police files of charges of gang activity or gang association on the part of Graham and Hanson, and (c) to give Graham and Hanson an opportunity to clear their names. Graham and Hanson also seek compensatory damages from the City and the police officers, punitive damages from the police officers individually, costs, and attorney fees.

## CONTENTIONS OF THE PARTIES

The City contends that Graham and Hanson do not have a claim for relief under the first amendment. The City argues that the right of intimate association is not afforded protection by the first amendment. In addition, the City argues that the "association" alleged in Graham and Hanson's complaint is not personal or intimate enough to be protected by the fourteenth amendment. The City asserts that the actions and conduct of the police officers resulted, at most, in a subjective chilling of Graham and Hanson's right to freely associate.

In addition, the City contends that 42 U.S.C. § 1981 only applies to racial discrimination in the making and enforcing of a contract, that there is no contract involved in the present case, and that Graham and Hanson's claims under section 1981 should be dismissed accordingly. The City also contends that Graham and Hanson lack standing to sue for a declaratory judgment and injunctive relief because the odds that they will again be stopped for a traffic violation and seized, searched or photographed without provocation are speculative. Finally, the City asserts that the complaint against John Doe police officers should be dismissed because the court lacks "subject matter jurisdiction over the person."

Graham and Hanson respond that case law does not limit first amendment associational protections as the City suggests. They assert that their association with each other and their friends has an expressive component which triggers first amendment protection. They state, however, that they are willing to amend their complaint to add a fourteenth amendment associational claim "if the court desires."

Graham and Hanson also contend that 42 U.S.C. § 1981 is applicable to cases of police misconduct. They contend they have pleaded facts which show that they have been subjected to violations of the "equal benefit" and "like punishment" clauses of section 1981, and that there is no authority for the City's position that section 1981 is limited to contractual matters.

Graham and Hanson argue that they are entitled to equitable relief. They contend that the actions taken against them by agents of the City were authorized by the City, and thus constitute the established policies and practices of the City. Graham and Hanson contend that case law grants them standing to challenge an established practice, and that they can show the likelihood of recurrence because the City has not disavowed its practice of dealing with persons suspected of using gang handsignals. In addition, Graham and Hanson contend that they suffer from the continuing, adverse harm of stigmatization, putting them at risk of future harassment by the police as well as actual gang members.

Graham and Hanson also contend that there is no absolute prohibition against Doe-pleading in the Ninth Circuit. They ask the court to allow them to keep the John Doe defendants in the complaint until discovery reveals their identities.

## APPLICABLE LAW

For purposes of a motion under Fed.R. Civ.P. 12(b)(6), the court views the complaint in the light most favorable to the plaintiffs and must generally accept as true the facts alleged. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). A court should dismiss a complaint for failure to state a claim only when it appears beyond doubt that the plaintiffs can prove no set of facts in support of the claim which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

### 1. Graham and Hanson's Freedom of Association Claims

■ The City contends that Graham and Hanson do not have claims for violations of their right of freedom of association under the first amendment. Both parties cite *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

In *Roberts*, the United States Supreme Court identified two lines of decisions respecting freedom of association. One line of decisions holds that:

> choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty.

*Id.* 468 U.S. at 617–18, 104 S.Ct. at 3249–50. The Court noted that the Bill of Rights affords certain "highly personal relationships a substantial measure of sanctuary from unjustified interference by the State," stating:

> The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family—marriage, *e.g.,* *Zablocki v. Redhail* [434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978)]; childbirth, *e.g.,* *Carey v. Population Services International* [431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977)]; the raising and education of children, *e.g.,* *Smith v. Organization of Foster Families* [431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977)]; and cohabitation with one's relatives, *e.g.,* *Moore v. East Cleveland* [431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)].

*Id.* 468 U.S. at 619, 104 S.Ct. at 3250.

In another line of decisions, the Court has upheld the right to associate for expressive purposes to engage in "those activities protected by the First Amendment —speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618, 104 S.Ct. at 3249. The *Roberts* Court states that implicit in this right to engage in activities protected by the first amendment is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* at 622, 104 S.Ct. at 3252.

Applying *Roberts* to the present action, plaintiffs allege that on September 14, 1988, Graham and Hanson were in a vehicle traveling with three friends, that they are "employed by a local law firm as file clerks and messengers," and that they are "young and black living in Portland." The court concludes that the complaint does not state facts adequate for a trier of fact to find the kind of personal relationship between Graham and Hanson and their friends which triggers the protection of the right to intimate association under the first amendment. Furthermore, the facts alleged are insufficient for the court to find that Graham and Hanson and their friends were associating for the purpose of engaging in an expressive activity protected by the first amendment. Thus, the City's motion to dismiss Graham and Hanson's claims for violations of their first amendment right to associate freely is granted.

### 2. Graham and Hanson's Claims Under 42 U.S.C. § 1981

■ Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981 (1981).

The United States Supreme Court implied that a contractual relationship is a prerequisite to a section 1981 claim in *Run-*

*yon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). In *Runyon,* the United States Supreme Court held that section 1981 prohibits private, commercially operated, nonsectarian schools from denying admission to prospective students because they are black, stating that "[i]t is now well established that ... 42 U.S.C. § 1981, prohibits racial discrimination in the making and enforcement of private contracts." *Id.* at 168, 96 S.Ct. at 2593. *See also Patterson v. McLean Credit Union,* 805 F.2d 1143 (4th Cir.1986), *cert. granted,* —— U.S. ——, 108 S.Ct. 1419, 99 L.Ed.2d 879 (1988) (certiorari granted to reconsider *Runyon's* interpretation of 42 U.S.C. § 1981).

Graham and Hanson seek redress under section 1981 on claims of racial harassment and discriminatory treatment by the police officers in the incident at issue rather than claims based on the making and enforcement of private contracts. These claims are not cognizable under section 1981. *Ivory v. Boise Cascade Corp.,* Civil No. 86–776–FR (D.Or. April 16, 1987) p. 4. Thus, the City's motion to dismiss Graham and Hanson's claims under 42 U.S.C. § 1981 is granted without leave to amend.

### 3. *Graham and Hanson's Claims to a Declaratory Judgment and Injunctive Relief*

Graham and Hanson seek preliminary and permanent injunctions (1) to prohibit defendants from harassing or unlawfully seizing or searching them based upon their alleged gang activity; and (2) to require the defendants (a) to return all of the photographs of Graham and Hanson, (b) to expunge any references from the police files of charges of gang activity or gang association on the part of Graham and Hanson; and (3) to require defendants to give Graham and Hanson the opportunity to clear their names. They assert that the actions taken against them by the police officers were authorized by the City and reflect the established policies and practices of the City. They contend that they can show the likelihood of recurrence because the City has not disavowed its practice for dealing with persons suspected of using

gang handsignals. They also contend that they are suffering from the continuing, adverse harm of stigmatization, putting them at risk of future harassment by the police as well as actual gang members.

The City responds that Graham and Hanson have not alleged an actual case or controversy under Article III of the United States Constitution, which is necessary to invoke this court's jurisdiction to grant them equitable relief. Thus, the City argues, Graham and Hanson's claims for declaratory judgment and for injunctions should be denied. Both parties cite *Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

In *Lyons,* a citizen of the City of Los Angeles sought money damages and injunctive relief against the City of Los Angeles, alleging that city police officers, without provocation or justification, seized him and applied a "chokehold," rendering him unconscious and causing damage to his larynx. In reversing the lower courts' decision to grant Lyons equitable relief, the United States Supreme Court held that his claim was too speculative. The Court determined that in order to establish a case or controversy under Article III, a plaintiff must show that he has sustained or is in immediate danger of sustaining some direct injury as the result of the challenged official conduct, and that the injury or threat of injury must be a "real or immediate threat that the plaintiff will be wronged again." *Id.* 461 U.S. at 111, 103 S.Ct. at 1670. The Court stated that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* at 102, 103 S.Ct. at 1665, citing *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974).

The Ninth Circuit followed *Lyons* in *Gonzales v. Peoria,* 722 F.2d 468 (9th Cir. 1983). In *Gonzales,* plaintiffs, who were of Mexican descent and who either had citizenship status, resident status, or had migrated to the State of Arizona to harvest citrus crops, sued the City of Peoria for deprivation of their federal constitutional

rights because of the city's enforcement of federal immigration laws. In addition to money damages, plaintiffs sought equitable and declaratory relief. In denying this claim, the court determined that to obtain equitable relief, plaintiffs must individually demonstrate a real threat of future violations of their constitutional rights. The court relied on *Lyons* and *O'Shea*, both *supra,* stating that "federal courts may not intervene in state enforcement activities absent extraordinary circumstances that threaten immediate and irreparable injury." *Id.* at 481.

■ In the present case, Graham and Hanson have not alleged facts that indicate they are threatened by immediate and irreparable injury. As in *Lyons,* Graham and Hanson have made assertions that they will be harassed by police officers or stopped in the future and searched and photographed as they were in the incident at issue. Thus, the City's motion to dismiss the claims of Graham and Hanson for preliminary and permanent injunctions prohibiting defendants from harassing or unlawfully seizing or searching them upon their alleged gang membership is granted.

■ However, Graham and Hanson allege that their photographs are being circulated to other police officers and are being used to identify them as gang members. They assert that these photographs put them at risk of future police harassment and harassment by actual gang members. If these allegations are true, Graham and Hanson may be subject to immediate and irreparable injury by the refusal of the police department to return the photographs. Therefore, the City's motion to dismiss Graham and Hanson's claims for an injunction requiring the defendants to return all of the photographs taken of them and to expunge any references from the police files of charges of gang activity or gang association on the part of Graham and Hanson and requiring defendants to give Graham and Hanson an opportunity to clear their names is denied.

### 4. *Graham and Hanson's Claims Against John Does 1 Through 10*

■ The City moves to dismiss Graham and Hanson's claims against John Does 1 through 10 on the grounds that this court lacks subject matter jurisdiction over those persons. In *Gillespie v. Civiletti,* 629 F.2d 637 (9th Cir.1980), the Ninth Circuit allowed plaintiffs to maintain a claim against John Doe defendants through discovery in an action alleging violations of the United States Constitution and of federal statutes against United States marshals and other unidentified defendants. The court stated:

> As a general rule, the use of "John Doe" to identify a defendant is not favored. See, *Wiltsie v. California Department of Corrections,* 406 F.2d 515, 518 (9th Cir.1968). However, situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities or that the complaint would be dismissed on other grounds.

*Id.* at 642. Therefore, the City's motion to dismiss Graham and Hanson's claims against John Does 1 through 10 is denied with leave to renew at the close of discovery.

### CONCLUSION

The City's motion (# 5) is granted in part and denied in part as follows:

The City's motion to dismiss Graham and Hanson's claims for violations of their first amendment rights to associate freely is granted.

The City's motion to dismiss Graham and Hanson's claims for violations of 42 U.S.C. § 1981 is granted without leave to amend.

The City's motion to dismiss Graham and Hanson's claims for a declaratory judgment and injunctions prohibiting defendants from harassing or unlawfully seizing or searching them for their alleged gang membership is granted.

The City's motion to dismiss Graham and Hanson's claims for a declaratory judgment and injunctions requiring the defendants to return all of the photographs taken of Graham and Hanson and to expunge any references from the police files of charges of gang activity or gang association on the part of Graham and Hanson and requiring defendants to give Graham and Hanson an opportunity to clear their names is denied.

The City's motion to dismiss Graham and Hanson's claims against John Does 1 through 10 is denied with leave to renew at the close of discovery.